IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JOHN PRINCE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 5:20-cv-00208-LCB |
| | ) |
| HUI HULIAU; DERYL WRIGHT; and | ) |
| HOWARD RUSSELL, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
THE ISSUE OF LIABILITY FOR BREACH OF CONTRACT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff John Prince ("Prince") submits this Memorandum of Law (the "Memorandum") in Support of his Motion for Partial Summary Judgment on the Issue of Liability for Breach of Contract (the "Motion") and the Evidentiary Submission submitted contemporaneously herewith.

## INTRODUCTION

Prince is entitled to judgment as a matter of law on his breach of contract claim (Count I) against Defendant Hui Huliau ("H2") because H2 indisputably defaulted and breached certain agreements between the parties. For example, the operative agreements prohibited H2 from causing KAYA Associates, Inc. ("KAYA") to loan money to H2 or third parties without Prince's written consent.

The undisputed facts show that H2 totally disregarded that restriction and caused KAYA to make unsecured, zero interest loans to H2 and "other related party entities" for approximately $350,000.00 in 2018 alone. As a result, Prince is entitled to judgment as a matter of law that H2 is liable for breaching the subject agreements.

## NARRATIVE SUMMARY OF UNDISPUTED FACTS

1. In 2003, Prince and others formed KAYA Associates, Inc. ("KAYA"), an Alabama corporation headquartered in Huntsville, Alabama. (Declaration of John Prince ("Prince Decl.") (Ex. A) at ¶ 3.)

2. Prince initially owned 90% of KAYA's stock. (Id.)

3. Prince's ethnicity made KAYA eligible for the Small Business Administration's 8(a) program, which sets aside certain government contracts for competition among certified 8(a) companies. (Id. at ¶ 4.)

4. However, KAYA's 8(a) status, and the advantages that went with it, expired after nine years. (Id.)

5. KAYA reorganized in April 2016. (Id. at ¶ 5.)

6. As part of the reorganization, Breifne Group, LLC ("Breifne") acquired all of KAYA's capital stock. (Id.)

7. As part of the Breifne acquisition, Prince loaned KAYA $6,389,201.25, the proceeds of which KAYA used to redeem Prince's KAYA stock. (Id.)

8. KAYA executed a Promissory Note and Security Agreement in favor of Prince (collectively "Original Loan Documents"), granting Prince a security interest and collateral for the $6.4 million loan he made to the company. (Id.)

9. On September 6, 2017, H2 acquired all of KAYA's stock from Breifne pursuant to a Transaction Agreement executed by H2, Breifne, Daniel McCauley (Breifne's Owner and Managing Member), KAYA, and Prince (the "H2 Transaction Agreement"). (H2 Transaction Agreement (Ex. B) (Doc. 17-2).)

10. The Transaction Agreement prohibited KAYA from paying any broker fees, finder fees, or any other fee or commission in connection with the transactions undertaken as part of H2's acquisition of KAYA. (H2 Transaction Agreement at §§ 3.20 and 4.4.)

11. On the same day that H2 acquired KAYA (September 6, 2017), H2 caused KAYA to pay a $200,000.00 fee or commission to an entity called 4P.[1] (Declaration of Steve Johnson ("Johnson Decl." (Ex. D) at ¶ 4.)

---

[1] According to the Declaration of Defendant Howard Russell ("Russell Decl."), submitted with Defendants' Opposition to Prince's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 7), 4P is a "shared services company that was formed by Hui to administer the management fees of its executives." (Russell Decl. (Ex. C) (Doc. 7-1) at ¶ 10.) Mr. Russell also testified

3

12. As part of H2's acquisition of KAYA, Prince agreed to restructure his loan to KAYA. (Prince Decl. at ¶ 6.)

13. On September 6, 2017, Prince and KAYA entered into an Amended and Restated Loan and Security Agreement with KAYA ("Loan Agreement"), restructuring KAYA's debt.[2] (Loan Agreement (Ex. E) (Doc. 17-4).)

14. In addition to the payment obligations, the Loan Agreement required KAYA and/or H2 to submit to Prince: (1) KAYA's compiled fiscal year-end financial statements compiled by an independent certified public accountant; (2) KAYA's interim company prepared financial statements after the close of each fiscal quarter; and (3) such other financial and related information when and as requested by Prince regarding KAYA and the collateral ("Financial Records Obligations"). (Loan Agreement at §§ 4.03 and 4.07.)

---

that 4P distributes to the Defendants "modest management fees from KAYA for services performed on KAYA's behalf in the amount of $20,000 per month." (Id. at ¶ 8; Johnson Decl. at ¶ 5.))

[2] The Loan Agreement required KAYA and/or Hui (as Guarantor) to make quarterly 6% interest payments to Prince until the unpaid principal balance of the Tranche A Loan was paid in full ("Tranche A Interest Payment"). KAYA and/or Hui (as Guarantor) was also required to make quarterly principal payments in an amount equal to the greater of (i) zero, and (ii) an amount for each calendar quarter, equal to 30% of KAYA's free cash flow for the three-month period ending on the last day of the second month of such calendar quarter ("Tranche A Principal Payment"). (Loan Agreement at § 1.03.2.)

4

15. The Loan Agreement also prohibited KAYA and H2 from engaging in specific acts ("Prohibited Transactions"), including without limitation, making any loans or advancing any monies to any other third person or entity, without Prince's prior written consent. (Loan Agreement at § 4.18.)

16. The Loan Agreement defined "Events of Default" to include, among other things:

> (a) if Borrower fails to pay when due and payable all or any portion of the principal of or interest on (together with premium thereon, if any) the Tranche A Loan….as when due and payable or any other default in the payment or performance of any other Liabilities arising in connection with the Loan, and if such failure continues for three (3) business days after the due date of such payment;
>
> . . . .
>
> (c) if Borrower [KAYA] of Guarantor [H2] fails in the due observance or performance of any covenant, condition, or agreement on the part of Borrower or Gurantor to be observed or performed pursuant to the terms of this [Loan] Agreement, the other Loan Documents, or any other agreement between Borrower (or Guarantor, as applicable) and Lender [Prince], and such failure continues for five (5) business days after written notice thereof is delivered By Borrower to Lender, or by discovery of Lender of such failure.

(Loan Agreement at § VI. EVENTS OF DEFAULT.)

17. As part of the restructuring of Prince's loan, H2 executed a Continuing Guaranty (the "H2 Guaranty"), whereby H2 guaranteed and promised

to pay KAYA's indebtedness to Prince under the Tranche A Loan ($3,287,500.00) of the Loan Agreement. (H2 Guaranty (Ex. F) (Doc. 17-6).)

18. Section 10 of the H2 Guaranty provides: "Guarantor [H2] agrees to pay attorney's fees and all other costs and expenses which may be incurred by Lender [Prince] in the enforcement of this Guaranty." (Id.)

19. H2 also executed an Accommodation Pledge Agreement (the "Stock Pledge Agreement") to, among other things, secure KAYA's and H2's obligations under the Loan Agreement, H2's obligations under the H2 Guaranty, and to assign, transfer, grant, convey, set over, and pledge the Common Stock of KAYA held by H2, together with any additional shares of the capital stock of KAYA later issued to H2 ("KAYA Stock"). (Stock Pledge Agreement (Ex. G) (Doc. 17-7).)

20. As part of that transaction, H2 executed an Assignment (Separate) From Certificate ("KAYA Stock Assignment"), whereby H2 sold, assigned, and transferred the KAYA Stock to Prince pursuant to the Stock Pledge Agreement. (Id.)

21. Section 4 of the Stock Pledge Agreement required H2 to deliver to Prince the original KAYA Stock certificates and the executed KAYA Stock Assignment, to be held by Prince until KAYA's indebtedness and/or H2's guaranty obligations under the H2 Guaranty were satisfied in full. (Stock Pledge Agreement.)

22.     H2 did not deliver the KAYA Stock to Prince as required by the Stock Pledge Agreement.[3]  (Prince Decl. at ¶ 8.)

23.     Section 7 of the Stock Pledge Agreement addressed Prince's remedies if KAYA or H2 defaulted on their obligations under the Loan Agreement and/or H2 Guaranty.  If an "Event of Default" occurred, Prince could: (1) declare the entire balance of the Tranche A Loan immediately due and payable; (2) sell the collateral, or any part thereof, including the KAYA Stock; (3) transfer the KAYA Stock to Prince's name and exercise all rights, powers, and remedies of an owner of the KAYA Stock; and/or (4) exercise all other remedies available to Prince under the Uniform Commercial Code (UCC) in effect in the State of Alabama, or in equity, or under the terms of any of the aforementioned agreements between Prince, KAYA, and/or H2.  (Stock Pledge Agreement.)

24.     Section 9(e) of the Stock Pledge Agreement provides: "In the event an action is brought by any party under this Agreement to enforce any of its terms, or in any appeal therefrom, it is agreed that the prevailing party shall be entitled to reasonable attorney's fees."  (Stock Pledge Agreement.)

---

[3] H2 delivered the KAYA Stock to Prince on March 9, 2020 (nearly three years after the parties entered the Stock Pledge Agreement) in accordance with the Consent Injunction (Doc. 14) entered by the Court following the hearing on Prince's Motion for Temporary Restraining Order and Preliminary Injunction.

25. Neither KAYA nor H2 has fully complied with the Financial Records Obligations, despite repeated requests by Prince. (Prince Decl. at ¶ 9.)

26. Howard Russell testified that H2 made a "Tranche A Principal and Interest Payment" on July 24, 2018 in the amount of $58,607.50. (Russell Decl. at ¶ 8.)

27. The Tranche A Interest Payment due on July 15, 2018 was $49,312.50, meaning the maximum amount of any Tranche A Principal Payment ever made by H2 was $9,295.00. (Prince Decl. at ¶ 10.)

28. To the extent H2 intended any portion of the July 24, 2018 payment as a Tranche A Principal Payment, H2 never provided any indication of its intention to Prince. (Id. at ¶ 11.)

29. KAYA and/or H2 made quarterly Tranche A Interest Payments until July 2019, at which time they defaulted by failing to make the required payment within three business days after the due date.[4] (Id. at ¶ 12.)

30. Prince contacted H2 in July 2019, and the parties met in August of 2019 to discuss H2's and KAYA's failure to pay the July 2019 Tranche A Interest Payment, their failure to make Tranche A Principal Payments, and their failure to comply with the Financial Records Obligations. (Id. at ¶ 13.)

---

[4] The Loan Agreement does not contain a cure provision for any "Events of Default," including the failure to make payments within three days of their due date. (Loan Agreement at § VI.)

31.     On August 15, 2019, Prince's counsel sent a default and demand letter to KAYA and H2 notifying them of their default and demanding, among other things, to inspect KAYA's books and records, and further demanding that KAYA and H2 cease and desist from engaging in Prohibited Transactions. (Ex. H (Doc. 17-8).)

32.     When his counsel sent the default and demand letter, Prince was not aware that: (1) H2 caused KAYA to pay a $200,000.00 fee to 4P in connection with H2's acquisition of KAYA; (2) H2 caused KAYA to loan funds to H2 and/or third parties; and (3) H2 caused KAYA to pay $20,000.00 per month to 4P for "management fees" without Prince's knowledge or consent. (Prince Decl. at ¶ 14.)

33.     On November 14, 2019, H2 sent Prince KAYA's 2017 and 2018 Consolidated Financial Statements. (Ex. I (Doc. 17-10).)

34.     KAYA's 2018 Consolidated Financial Statement (the "2018 Statement") contained an entry for "related party receivable" in the amount of $349,367.00 which, according to the notes accompanying the 2018 Statement, reflected unsecured, zero interest loans from KAYA to H2 and "other related party entities" equal to the amount of the "related party receivable." (Id.)

35. The 2018 Statement's notes also identified $527,866.00 in unallowable costs.[5]  (Id.)

36. In an email dated February 13, 2020, Howard Russell stated that, despite the Defendants' management of KAYA over the past three years — during which time H2 caused KAYA to pay Defendants $20,000.00 per month in management fees — H2 "uncovered significant irregularities that have caused Kaya in excess of 6 figures (maybe even 7 figures) in profitability." (Ex. J (Doc. 17-9).)

37. From the time of H2's acquisition of KAYA until the date of the TRO hearing, the Defendants caused KAYA to pay them (either directly or through 4P) and/or loan H2 (and related entities) in excess of $1 million. (*See* Johnson Decl. at ¶¶ 4-5; Russell Decl. at ¶ 8; Ex. H).

38. During the same timeframe, Prince has received only interest payments and *possibly* a single principal payment of $9,295.00 in connection with the debt owed to him. (Prince Decl. at ¶ 15.)

---

[5] Allowable costs are contractor costs that benefit the contract being performed. Accounting services, insurance costs, some legal costs, rent, some travel costs, and salaries for indirect employees (i.e., those not directly performing work specifically identified in the contract, such as executive and management staff) are examples of potentially allowable costs. Subject to FAR Part 31, the government will reimburse allowable costs on flexibly priced contracts. By contrast, unallowable costs do not benefit the contractor's contracts, and are not reimbursed by the government. The contractor simply absorbs them.

## ARGUMENT

Under Alabama law, a breach of contract claim requires the plaintiff to show that a valid contract existed; the plaintiff's performance under the contract; the defendant's nonperformance; and damages. Cole v. Owners Ins. Co., 326 F. Supp. 3d 1307, 1320-21 (N.D. Ala. 2018) (citing Emps. Benefit Ass'n v. Grissett, 732 So.2d 968, 975 (Ala. 1998). In analyzing the parties' performance or nonperformance, "[t]he court must enforce an unambiguous contract as written." Id. (citing Drummond Co. v. Walter Industries, Inc., 962 So.2d 753, 780 (Ala. 2006)).

In this case, the Transaction Agreement clearly and unambiguously prohibited KAYA from paying any fee or commission in connection with H2's acquisition of KAYA. (H2 Transaction Agreement at §§ 3.20 and 4.4.) The Loan Agreement clearly and unambiguously prohibited H2 from causing KAYA to make any loans or advance any monies to H2 or any other third person or entity, without the prior written consent of Prince. (Loan Agreement at § 4.18.) The undisputed facts show that H2 caused KAYA to commit "Events of Default" under the Loan Agreement by paying 4P a $200,000.00 fee in connection with H2's acquisition of KAYA, and by causing KAYA to loan H2 and "other related party entities" nearly $350,000.00 in 2018 alone.

To be sure, H2 committed other breaches, including failing to timely make Tranche A Principal Payments when they became due, failing to comply with its Financial Records Obligations, and by paying hundreds of thousands of dollars in "management fees" to Defendants.[6] Without waiving Prince's right to pursue his claims and damages related to those and other breaches by H2, this Motion focuses solely on those breaches that H2 cannot deny in any realistic way and for which discovery is not required.

The relatively narrow focus of this Motion does not narrow Prince's remedies under the operative agreements. Indeed, pursuant to the unambiguous terms of the Stock Pledge Agreement, *any* "Event of Default" entitles Prince to the full spectrum of contractual remedies, including without limitation, (1) declaring the entire balance of the Tranche A Loan immediately due and payable; (2) selling the collateral, or any part thereof, including the KAYA Stock; (3) transferring the KAYA Stock to Prince's name and exercising all rights, powers, and remedies of an owner of the KAYA Stock; and/or (4) exercising all other remedies available to Prince under the Uniform Commercial Code (UCC) in effect in the State of Alabama, or in equity, or under the terms of any of the aforementioned agreements between Prince, KAYA, and/or H2.

---

[6] And for those management fees, KAYA has encountered "significant irregularities" that have cost KAYA — and Prince — hundreds of thousands of dollars.


In addition to only focusing on certain breaches, the Motion is expressly limited to the issue of H2's liability for those breaches.  (Motion at ¶ 3 and fn. 1.) As discussed above, the subject contracts provide Prince a spectrum of cumulative remedies in the event of a breach.  Prince's exercise of one or more of the non-monetary remedies available to him may impact the type and amount damages that Prince ultimately seeks in this case.  The Court's determination that H2 breached the subject contracts will give Prince the right to exercise those remedies while the remaining claims are fully litigated and developed.  It will also allow Prince to seek a full and complete remedy at trial, without the need for further actions.

H2 indisputably breached the operative agreements by causing KAYA to pay Defendants a $200,000.00 fee in connection with H2's acquisition of KAYA, and by causing KAYA to loan H2 and "other related party entities" nearly $350,000.00 in 2018 alone.  Accordingly, Prince is entitled to judgment as a matter of law on the issue of H2's liability under the breach of contract claim (Count I).

## CONCLUSION

For the reasons set forth above, Prince respectfully requests that the Court enter judgment in his favor as to his breach of contract claim (Count I) against H2, **as to liability only**, including an order finding that Prince is entitled to all contractual remedies set forth in the operative agreements, and preserving the issue of damages on that count for trial.

Respectfully submitted this 10th day of April, 2020.

/s/  W. Brad English
W. Brad English
Benjamin L. McArthur
***Attorneys for Plaintiff John Prince***

**OF COUNSEL:**
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street
Huntsville, Alabama 35801
Telephone:  (256) 551-0171
Facsimile:  (256) 512-0119
Email:  benglish@maynardcooper.com
            bmcarthur@maynardcooper.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this 10th day of April, 2020, served a copy of the foregoing upon all parties to the matter through the Court's electronic case management system, which will effect service upon the following:

Lauren A. Smith
C. Gregory Burgess
Stephanie M. Gushlaw
**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087
Huntsville, Alabama 35804

Brian K. Parker
Eric A. Frick
**PARKER POE ADAMS & BERNSTEIN LLP**
Three Wells Fargo Center
401 South Tryon Street, Suite 3000
Charlotte, NC 28202

*Attorneys for Defendants Hui Huliau,*
*Deryl Wright, and Howard Russell*

                                          s/ W. Brad English
                                          Of Counsel