FILED

2020 May-04  PM 04:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **JOHN PRINCE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:20-cv-00208-LCB** |
| | ) |
| **HUI HULIAU; DERYL WRIGHT;** | ) |
| **HOWARD RUSSELL; and** | ) |
| **4P MANAGEMENT COMPANY, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

## FIRST AMENDED AND RESTATED COMPLAINT

COMES NOW Plaintiff JOHN PRINCE files this First Amended and Restated Complaint (this "Complaint") against HUI HULIAU, DERYL WRIGHT, HOWARD RUSSELL, and 4P MANAGEMENT COMPANY, LLC pursuant to Rules 15 and 19 of the Federal Rules of Civil Procedure, and this Court's Scheduling Order (Doc. 21), as subsequently amended by the General Orders entered by this Court.  In support of his Complaint against Defendants, Prince states the following:

## PARTIES

1.     Plaintiff John Prince ("Prince") is an individual over the age of nineteen (19) years who resides in Guntersville (Marshall County), Alabama.

2.      Defendant Hui Huliau ("Hui") is a Hawaii Nonprofit Corporation headquartered in Waianae, Hawaii.

3.      Defendant Deryl Wright ("Wright") is an individual over the age of nineteen (19) years who, upon information and belief, resides in Norman, Oklahoma.  Wright is Hui's Chief Executive Officer (CEO).

4.      Defendant Howard Russell ("Russell") is an individual over the age of nineteen (19) years who, upon information and belief, resides in Monroeville, Pennsylvania.  Russell is Hui's Chief Financial Officer (CFO).

5.      Defendant 4P Management Company, LLC ("4P") is a Delaware limited liability company headquartered in Norman, Oklahoma.  Upon information and belief, one or more of Hui, Wright, and/or Russell are members of 4P.

6.      Hui, Wright, Russell, and 4P are collectively referred to herein as "Defendants."

7.      Each of the Defendants acted individually and/or as the agent, servant, employee, partner and/or co-venturer of one another, or were otherwise engaged in a joint enterprise.  Alternatively, each of the Defendants acted through their agents, servants, employees, partners and/or co-venturers and are liable to Prince under respondeat superior and/or agency theories, or are otherwise vicariously liable.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as complete diversity exists between the parties, and the amount in controversy exceeds $75,000.00.

9.      Venue is proper in this Court under 28 U.S.C. § 1391.

10.      This Court has personal jurisdiction over the Defendants because, among other things: (1) they transacted, and continue to transact, business within the state of Alabama; (2) the claims asserted in this action arose from or are connected with purposeful and tortious acts or omissions committed by them, in whole or in part, in or directed toward a resident of the state of Alabama; (3) they have committed tortious acts or omissions, directly or indirectly, that caused substantial harm in the state of Alabama; (4) they have had continuous and systematic contacts with the state of Alabama by engaging in numerous activities that have had an effect in this state; (5) they executed contracts in Alabama with an Alabama resident (Prince) that required performance in Alabama; and/or (6) they have consented to this Court's exercise of personal jurisdiction in this action.

11.      Moreover, pursuant to a Continuing Guaranty entered between Hui and Prince on or about August 31, 2017 ("Hui Guaranty"), the parties stipulated and agreed, in pertinent part, as follows:

> Guarantor [Hui] acknowledges the negotiation of the
> provisions of this Guaranty took place, and this Guaranty

3

is being executed in the State of Alabama.  Guarantor acknowledges that any cause of action arising under this Guaranty will be a cause of action arising from an Alabama transaction and that it is guaranteeing payment of Indebtedness owing to an individual resident of the State of Alabama, that it is foreseeable that this Guaranty and the performance hereof have and will have significant effects in the State of Alabama, and that Guarantor's execution of this Guaranty will subject Guarantor to the jurisdiction of the State of Alabama.

12.     Pursuant to an Accommodation Pledge Agreement entered between

Hui and Prince on September 6, 2017 ("Stock Pledge Agreement"), the parties

stipulated and agreed, in pertinent part, as follows:

(c)  This [Stock Pledge] Agreement shall be governed by and construed in accordance with the laws of the State of Alabama, without regard to its conflict of laws principles that would result in the application of the laws of a different state.

(d) Jurisdiction and Venue.  The parties to this [Stock Pledge] Agreement agree that any action on this Agreement shall be brought exclusively in a court of competent subject matter jurisdiction located in Huntsville, Madison County, Alabama.  The parties hereby consent to personal jurisdiction in such courts….Each party hereby agrees that such courts constitute reasonable and convenient venues for the adjudication for any dispute arising under this [Stock Pledge] Agreement and agrees to waive any defense based on the convenience of any such court as a forum.

4

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

13.     In 2003, Prince and others formed KAYA Associates, Inc.
("KAYA"), an Alabama corporation headquartered in Huntsville, Alabama.  Prince
owned 90% of KAYA's stock.

14.     Prince's ethnicity made KAYA eligible for the Small Business
Administration's 8(a) program, which sets aside certain government contracts for
competition among certified 8(a) companies.

15.     Under Prince's ownership and leadership, KAYA grew and prospered.
Much of KAYA's success was built upon its status as a small, disadvantaged 8(a)
business.  However, KAYA's 8(a) status, and the advantages that went with it,
expired after nine years.

16.     KAYA reorganized in April 2016.  As part of the reorganization,
Breifne Group, LLC ("Breifne") acquired all of KAYA's capital stock.  As part of
that transaction, Prince loaned KAYA $6,389,201.25, the proceeds of which were
used by KAYA to redeem Prince's KAYA stock.  KAYA executed a Promissory
Note and Security Agreement in favor of Prince (collectively "Original Loan
Documents"), granting Prince a security interest and collateral for the $6.4 million
loan he made to the company.

17.     On September 6, 2017, H2 acquired all of KAYA's stock from
Breifne pursuant to a Transaction Agreement executed by H2, Breifne, Daniel

McCauley (Breifne's Owner and Managing Member), KAYA, and Prince (the "Hui Transaction Agreement").  As part of that transaction, Hui paid Prince $500,000.00 and, following a true-up, Prince swept $1,587,928.00 from KAYA's bank account.

18.     The Hui Transaction Agreement prohibited KAYA from paying any broker fees, finder fees, or any other fee or commission in connection with the transactions undertaken as part of Hui's acquisition of KAYA.

19.     On the same day that Hui acquired KAYA (September 6, 2017), Hui caused KAYA to pay a $200,000.00 fee or commission to 4P.

20.     As part of Hui's acquisition of KAYA, Prince agreed to restructure the loan to KAYA reflected in the Original Loan Documents.  On September 6, 2017, Prince and KAYA entered into an Amended and Restated Loan and Security Agreement with KAYA ("Loan Agreement"), restructuring KAYA's debt into two tranches: Tranche A in the amount of $3,287,500.00 ("Tranche A Loan"), and Tranche B in the amount of $1,314,201.00 ("Tranche B Loan").  Hui also executed an Amended and Restated Promissory Note in the amount of $4,481,701.25 ("Promissory Note").

21.     The Loan Agreement required KAYA and/or Hui (as Guarantor) to make quarterly 6% interest payments to Prince until the unpaid principal balance of the Tranche A Loan was paid in full ("Tranche A Interest Payment").  KAYA

and/or Hui (as Guarantor) was also required to make quarterly principal payments in an amount equal to the greater of zero plus 30% of KAYA's free cash flow for the three-month period ending on the last day of the second month of such calendar quarter ("Tranche A Principal Payment").

22.     The Loan Agreement required KAYA and/or Hui to submit to Prince: (1) KAYA's compiled fiscal year-end financial statements compiled by an independent certified public accountant; (2) KAYA's interim company prepared financial statements after the close of each fiscal quarter; and (3) such other financial and related information when and as requested by Prince regarding KAYA and the collateral ("Financial Records Obligations").

23.     The Loan Agreement prohibited KAYA and Hui from engaging in specific acts that could jeopardize KAYA's ability to pay the indebtedness owed to Prince or otherwise operate as a going concern, including without limitation: (1) incurring any new indebtedness without the prior written consent of Prince, if such indebtedness would result in KAYA having a debt service coverage ratio of greater than three to one (3:1) during its first year after such borrowing; (2) liquidating, discontinuing, or materially reducing KAYA's normal operations; (3) dissolving, merging, liquidating, or selling KAYA; (4) guaranteeing, endorsing, or becoming a surety for obligations of any other person or entity, without the prior written consent of Prince; (5) making any loans or advancing any monies to any other third

person or entity, without the prior written consent of Prince ("Prohibited Transactions").

24.     As part of the restructuring of Prince's loan to KAYA, Hui executed the Hui Guaranty on September 6, 2017, whereby Hui guaranteed and promised to pay KAYA's indebtedness to Prince under the Tranche A Loan and Loan Agreement.

25.     As part of the restructuring of Prince's loan to KAYA, Hui executed the Stock Pledge Agreement to, among other things, secure Hui's obligations under the Hui Guaranty, and to assign, transfer, grant, convey, set over, and pledge the Common Stock of KAYA held by Hui, together with any additional shares of the capital stock of KAYA later issued to Hui ("KAYA Stock").  As part of that transaction, Hui executed an Assignment (Separate) From Certificate ("KAYA Stock Assignment"), whereby Hui sold, assigned, and transferred the KAYA Stock to Prince pursuant to the Stock Pledge Agreement.

26.     Section 4 of the Stock Pledge Agreement required Hui to deliver to Prince the original KAYA Stock certificates and the executed KAYA Stock Assignment, to be held by Prince until KAYA's indebtedness and/or Hui's guaranty obligations under the Hui Guaranty were satisfied in full.

27.     The Defendants failed or refused to deliver the KAYA Stock to Prince as required by the Stock Pledge Agreement.

28.     Section 7 of the Stock Pledge Agreement addressed Prince's remedies if KAYA or Hui defaulted on their obligations under the Loan Agreement and/or Hui Guaranty.  In the event of default, Prince could: (1) declare the entire balance of the Tranche A Loan immediately due and payable; (2) sell the collateral, or any part thereof, including the KAYA Stock; (3) transfer the KAYA Stock to Prince's name and exercise all rights, powers, and remedies of an owner of the KAYA Stock; and/or (4) exercise all other remedies available to Prince under the Uniform Commercial Code (UCC) in effect in the State of Alabama, or in equity, or under the terms of any of the aforementioned agreements between Prince, KAYA, and/or Hui.

29.     KAYA and/or Hui made quarterly Tranche A Interest Payments until June 2019, at which time they defaulted.

30.     Upon information and belief, Hui made a single quarterly Tranche A Principal Payment in the amount of $9,295.00 on July 24, 2018.

31.     Neither KAYA nor Hui has fully complied with the Financial Records Obligations, despite repeated requests by Prince.

32.     Prince contacted Hui in July 2019, and the parties met in August of 2019 to discuss Hui's and KAYA's failure to pay the June 2019 Tranche A Interest Payment, Hui's and KAYA's failure to make Tranche A Principal Payments, and

their failure to comply with the Financial Records Obligations.  On August 15,

2019, Prince's counsel sent a default and demand letter to Hui and KAYA.

33.     Following these communications, Hui and/or KAYA began making

quarterly Tranche A Interest payments but refused to make any further Tranche A

Principal Payments or fully comply with the Financial Records Obligations.

34.     Prince has since learned that the Defendants have been pilfering and

depleting KAYA's assets and cash reserves by, among other things, engaging in or

causing KAYA to engage in Prohibited Transactions to avoid paying Tranche A

Principal Payments, diminish and/or waste the value of Prince's collateral, namely

the KAYA Stock.  Specifically, the Defendants have caused KAYA unlawfully

direct KAYA funds to themselves, to pay the Defendants' personal expenses, third-

parties, and/or entities owned or controlled by the Defendants.  Prince has also

learned that the Defendants have (or intend to) transfer and comingle KAYA's

financial and accounting functions with Hui's and/or other entities owned and

controlled by Hui.

35.     For example, Hui only recently provided KAYA's consolidated

financial statements for the fiscal year ended December 31, 2018.  Those

statements showed nebulous entries for "other expenses" of ($281,215.00), and

"related party receivable" of ($349,367.00).  According to the notes accompanying

the statements, the "related party receivable" reflected unsecured, zero interest

10

loans from KAYA to Hui and other "related party entities."   The notes also

identified $527,866.00 in unallowable costs that could not be included in prices,

cost reimbursements, or settlements under a government contract.

36.     Moreover, in a February 13, 2020 email to Prince, Russell admitted

that Hui "uncovered significant irregularities that have caused Kaya in excess of 6

figures (maybe even 7 figures) in profitability."

37.     Defendants Wright, Russell and 4P knew or should have known that

Prince entered into the Transaction Agreement, Loan Agreement, Promissory

Note, Hui Guaranty, Stock Pledge Agreement, and KAYA Stock Assignment with

KAYA and Hui.  Despite their knowledge of these contracts, Defendants Wright,

Russell and 4P intentionally and tortiously interfered with Prince's contractual

agreements with KAYA and Hui, and knowingly and intentionally caused and/or

aided KAYA and Hui to breach their contractual obligations to Prince.

38.     The Defendants' acts and omissions are part of an overall scheme

and/or conspiracy to tortiously interfere with the contractual and business

relationships of Prince, and were willful, wanton, malicious, oppressive, reckless

and/or were undertaken with the intent to defraud.

<u>**COUNT I**</u>
**BREACH OF CONTRACT AGAINST HUI**

39.     Prince reasserts and realleges the preceding allegations as if fully set

forth herein.

11

40.     Prince entered into valid and binding contracts with Hui that were supported by adequate consideration.  These contracts included, without limitation, the Hui Transaction Agreement, the Loan Agreement, the Promissory Note, the Hui Guaranty, the Stock Pledge Agreement, and the KAYA Stock Assignment.

41.     Hui breached its contracts with Prince by, among other things: (1) failing or refusing to deliver the KAYA Stock to Prince as required by the Stock Pledge Agreement; (2) failing or refusing to make Tranche A Interest Payments when they became due under the Loan Agreement and/or Hui Guaranty; (3) failing or refusing to make any Tranche A Principal Payments when they became due under the Loan Agreement and/or Hui Guaranty; (4) failing or refusing to comply with the Financial Records Obligations; (5) engaging in and/or causing KAYA to engage in Prohibited Transactions; and/or (6) otherwise pilfering and depleting KAYA's assets and cash reserves to avoid paying Tranche A Principal Payments, diminish and/or waste the value of Prince's collateral, namely the KAYA Stock.

42.     Prince has fully performed his obligations pursuant to the contracts with Hui, and any conditions precedent have been satisfied.

43.     Prince has suffered significant financial damages as a direct and proximate result of Hui's breaches.

## COUNT II
## BREACH OF FIDUCIARY DUTY AGAINST HUI

44.    Prince reasserts and realleges the preceding allegations as if fully set forth herein.

45.    By virtue of the Loan Agreement, Promissory Note, Hui Guaranty, Stock Pledge Agreement, KAYA Stock Assignment, and/or Prince's interest in the KAYA Stock (as a creditor and assignee), Hui owed fiduciary duties to Prince, including, but not limited to, the highest obligations of good faith, fair dealing, loyalty and due care.  These duties encompassed, without limitation, obligations to: (1) make full and complete disclosure of all material facts that might affect Prince's interest in the KAYA Stock; (2) use care, skill and diligence in the performance of their and KAYA's duties and obligations; (3) fully and completely disclose Hui's intentions with respect to KAYA's business operations; and/or (4) exercise a high degree of honesty, loyalty, integrity and good faith.

46.    Prince reposed trust and confidence that Hui would abide by its fiduciary duties.  Hui violated and breached its fiduciary duties of care, honesty, candor, good faith and loyalty by, among other things: (1) failing or refusing to deliver the KAYA Stock to Prince as required by the Stock Pledge Agreement; (2) failing or refusing to make Tranche A Interest Payments when they became due under the Loan Agreement and/or Hui Guaranty; (3) failing or refusing to make any Tranche A Principal Payments when they became due under the Loan

13

Agreement and/or Hui Guaranty; (4) failing or refusing to comply with the

Financial Records Obligations; (5) engaging in and/or causing KAYA to engage in

Prohibited Transactions; and/or (6) otherwise pilfering and depleting KAYA's

assets and cash reserves to avoid paying Tranche A Principal Payments, diminish

and/or waste the value of Prince's collateral, namely the KAYA Stock.

47.     As a direct and proximate result of Hui's disloyal acts and omissions,

as described in this Complaint, Prince has sustained significant damages,

including, but not limited to the diminution of the value of his collateral, namely

the KAYA Stock.

<u>**COUNT III**</u>
**FRAUDULENT SUPPRESSION AGAINST ALL DEFENDANTS**

48.     Prince reasserts and realleges the preceding allegations as if fully set

forth herein.

49.     The Defendants suppressed certain material facts from Prince,

including, but not limited to, that Hui would NOT: (1) deliver the KAYA Stock to

Prince as required by the Stock Pledge Agreement; (2) make Tranche A Interest

Payments when they became due under the Loan Agreement and/or Hui Guaranty;

(3) make Tranche A Principal Payments when they became due under the Loan

Agreement and/or Hui Guaranty; (4) comply with the Financial Records

Obligations; (5) engage in and/or cause KAYA to engage in Prohibited

Transactions; and/or (6) otherwise pilfer and deplete KAYA's assets and cash

14

reserves to avoid paying Tranche A Principal Payments, diminish and/or waste the value of Prince's collateral, namely the KAYA Stock.

50.     Further, Wright, Russell, and/or 4P suppressed that they intended to interfere with Prince's contracts with KAYA and Hui.

51.     The Defendants owed a duty and were obligated to disclose these and other material facts to Prince.

52.     The Defendants intentionally, recklessly and/or negligently suppressed these material facts from Prince between August 2017 and the date of this Complaint.

53.     The Defendants' suppression of these material facts induced Prince to act or refrain from acting, including, but not limited to: (1) entering into the aforementioned contracts with KAYA and Hui; (2) forbearing exercising his rights and/or remedies for KAYA's and Hui's defaults; and/or (3) forgoing and/or postponing business opportunities. Prince reasonably relied on and acted to his detriment as a result of the Defendants' suppression.

54.     The Defendants' fraudulent concealment or suppression and deceit has caused and continues to cause substantial financial loss and damages to Prince.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS AGAINST WRIGHT, RUSSELL, AND 4P

55.     Prince reasserts and realleges the preceding allegations as if fully set forth herein.

56.     Wright, Russell, and 4P knew or should have known that Prince entered into the aforementioned agreements with KAYA and Hui.

57.     Despite their knowledge, Wright, Russell, and 4P intentionally and tortiously interfered with Prince's contractual agreements with KAYA and Hui, and knowingly and intentionally caused and/or aided KAYA and Hui to breach their contractual obligations to Prince.

58.     Wright, Russell, and 4P's interference with Prince's contractual and business relations was and is improper and without justification.

59.     Wright, Russell, and 4P's interference with Prince's contractual and business relations has caused and continues to cause substantial financial loss and damages to Prince.

## COUNT V
## DECLARATORY JUDGMENT

60.     Prince reasserts and realleges the preceding allegations as if fully set forth herein.

61.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq.* and Ala. Code §§ 6-6-220, *et seq.*, Prince respectfully requests the Court to declare

16

the rights, privileges and/or entitlements of the parties with respect to the Hui

Transaction Agreement, the Loan Agreement, the Promissory Note, the Hui

Guaranty, the Stock Pledge Agreement, and the KAYA Stock Assignment.

62.     A justiciable and bona fide controversy presently exists between the

parties as to this matter and Prince is entitled to have it resolved by this Court.

## <u>COUNT VI</u>
## INJUNCTIVE RELIEF

63.     Prince, pursuant to Rule 65 of the <u>Federal Rules of Civil Procedure</u>,

requests the Court to maintain the Consent Injunction entered by the Court on

February 28, 2020 (Doc. 14).

64.     Unless the Defendants are restrained, they will continue to act

unlawfully toward Prince and further diminish the value of the KAYA Stock.

65.     If the Defendants continue in their unlawful conduct, Prince will

suffer immediate and irreparable injury.

66.     Prince has no adequate remedy at law for the Defendants' actions

since the damages he will suffer are incapable of exact proof, as is the harm that

the Defendants will impose upon Prince.

67.     Preliminary injunctive relief is necessary to protect Prince's rights and

to prevent unavoidable and irreparable injuries to him.

68.     As demonstrated above, there is not only a substantial, but a real and imminent likelihood that Prince will succeed on the merits of the claims asserted herein.

69.     Additionally, there is no evidence that any hardship imposed on the Defendants by maintaining the Consent Injunction will unreasonably outweigh the benefit accruing to Prince.  Rather, the harm caused Prince as a result of the Defendants' actions far exceeds any alleged harm caused them as a result of any such preliminary injunctive relief.

## RELIEF

WHEREFORE, premises considered, Prince respectfully requests that the Court award the following relief incident to the claims set forth above:

1.     Immediately transferring and vesting title in the KAYA Stock to Prince.

2.     Maintaining the Consent Injunction entered by the Court on February 28, 2020 (Doc. 14).

3.     After trial of this cause, a permanent injunction against the Defendants enjoining the Defendants from:

(a)     engaging in or causing KAYA to engage in any of the Prohibited Transactions;

(b)     engaging in or causing KAYA to engage in any acts that  diminish the value of the KAYA Stock;

(c)     directing or causing KAYA to direct KAYA funds to themselves;

(d)     paying or causing KAYA to pay the Defendants' personal expenses from KAYA funds;

(e)     directing or causing KAYA to loan money or otherwise direct payment to third-parties and/or entities owned or controlled by the Defendants;

(f)     transferring and/or comingling KAYA's financial and accounting functions with Hui's and/or other entities owned and controlled by Hui;

(g)     selling any KAYA assets; and

(h)     terminating any current KAYA personnel.

4.     After trial of this cause, a judgment declaring Prince the owner of the KAYA Stock.

5.     After trial of this cause, a judgment for actual damages, consequential damages, punitive and exemplary damages, statutory damages, and pre- and post-judgment interest;

6.     After trial of this cause, a judgment for attorneys' and expert witness fees, court costs and all other expenses associated with the prosecution of this action; and

7.     For such other and further relief to which Prince shows he is justly

entitled at law or in equity.

Respectfully submitted this 4th day of May, 2020.

/s/  W. Brad English
W. Brad English
Benjamin L. McArthur
*Attorneys for Plaintiff John Prince*

**OF COUNSEL:**
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street
Huntsville, Alabama 35801
Telephone:  (256) 551-0171
Facsimile:  (256) 512-0119
Email:  benglish@maynardcooper.com
        bmcarthur@maynardcooper.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this 4th day of May, 2020, served a copy of the foregoing upon all parties to the matter through the Court's electronic case management system, which will effect service upon the following:

Lauren A. Smith
C. Gregory Burgess
Stephanie M. Gushlaw
**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087
Huntsville, Alabama 35804

*Attorneys for Defendants Hui Huliau,*
*Deryl Wright, and Howard Russell*

/s/  W. Brad English
Of Counsel

20

**PLEASE SERVE THE FOLLOWING BY CERTIFIED MAIL:**

4P MANAGEMENT COMPANY, LLC
c/o Deryl Wayne Wright, Registered Agent
1500 Wandering Oaks Lane
Norman, Oklahoma  73026