

FILED
2020 May-08  PM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **JOHN PRINCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.: 5:20-cv-00208-LCB** |
| **HUI HULIAU; DERYL WRIGHT;** | ) | |
| **HOWARD RUSSELL; and** | ) | |
| **4P MANAGEMENT COMPANY, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLANTIFF'S COMPLAINT

Prince[1] submits this Response in Opposition to the Motion for Partial Dismissal of his Complaint (Docs. 18 and 19, the "Motion") filed by Hui Huliau ("H2"), Wright and Howard (collectively, "Defendants").[2]  The Motion should be denied for the following reasons:

---

[1] For brevity, Prince largely continues the use of terms he defined in prior filings.

[2] Prince filed a First Amended and Restated Complaint on May 4, 2020, adding 4P Management Company, LLC ("4P") as a defendant and asserting certain claims against it.  (Doc. 29.) References to Prince's "Complaint" are to that document.

## Introduction

Defendants' motion to dismiss is based on a relatively simple, but logically flawed, premise. They couch Prince's relationship with KAYA and H2 as a simple debtor-creditor relationship. To them, that simple relationship bars Prince's claims for breach of fiduciary duty and fraudulent suppression. But the debtor-creditor nature of their relationship **is not a panacea**. For similar (equally wrong) reasons, Defendants insist that there is no legal basis for Prince's intentional interference claim. All of Prince's claims are viable even recognizing that he is KAYA's and H2's creditor. The Motion is due to be denied.

## I.      The Standard of Review Does Not Help Defendants.

Context is always important, but particularly helpful when framing the proper standard of review. The Motion relies on Rule 12(b)(6), which tests the sufficiency of legal pleadings. *Russell v. Tyson Farms, Inc.*, 2020 WL 1508546, at *1 (N.D. Ala. Mar. 30, 2020). Importantly, though, the Court's review is not an exactly one, but rather a search for plausibility. *Poursaied v. Reserve at Research Park LLC*, 379 F. Supp. 3d 1182, 1185, n. 4 (N.D. Ala. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007)). That is, the Court looks to determine if Prince stated a plausible claim for relief. *Id.* Prince will have accomplished that goal if his Complaint

states enough facts to give rise to a reasonable expectation that discovery will lead to evidence to support his claims. *Penaloza v. Drummond Co., Inc.*, 384 F. Supp. 3d 1328, 1340 (N.D. Ala. 2019) (citing *Twombly*, 550 U.S. at 556). The Court will be aided in its review by the presumption that Prince's well-plead allegations are true, and are to be construed in the light most favorable to him. *Russell*, 2020 WL 1508546, at *1 (citing *Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015)). Prince has cleared the intentionally-low hurdle of Rule 12(b)(6).

## II.    The Motion should be denied because Prince has asserted viable causes of action.

The Defendants seek dismissal of Prince's claims against them for breach of fiduciary duty (Count II asserted against H2), fraudulent suppression (Count III against all Defendants) and tortious interference with contractual relationship (Count IV against Wright and Russell). The following sections address each of the claims under attack.

### A.    Prince Stated a Breach of Fiduciary Claim Against H2.

Honesty compels Prince to acknowledge that, as a general proposition, Alabama law does not deem debtor-creditor relationships to be fiduciary in nature. *Ex parte Ford Motor Credit Co.*, 717 So. 2d 781, 786-787 (Ala. 1997) ("[I]n the absence of a special confidential relationship, the general creditor-debtor

relationship does not impose a fiduciary duty"). Of course, as with virtually all general rules, this one has exceptions. It is widely recognized that fiduciary duties can arise from a "confidential relationship," even when that relationship originates from a debtor-creditor transaction. *Id.*; *see also Bank of Red Bay v. King*, 482 So. 2d 274, 284 (Ala. 1985). Prince has alleged facts that bring this case well within that acknowledged exception to the general rule.

In *Bank of Red Bay v. King*, the Alabama Supreme Court defined a "confidential relationship" as one where:

> one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted [sic], or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.

*Id.* (quoting 15A C.J.S. Confidential (1967)). Pertinent to this case is the situation in which one leverages the trust and confidence reposed in him to obtain an

advantage over another.[3]  And that is exactly the situation Prince's complaint described.

Prince alleged that the nature of the transactions and, particularly, "the Loan Agreement, Promissory Note, Hui Guaranty, Stock Pledge Agreement, KAYA Stock Assignment and/or Prince's interest in the KAYA Stock (as creditor and assignee)" gave rise to a fiduciary duty.[4]  (Compl. at ¶ 45.)  To be sure, the transactions before the Court are certainly different, and more complicated, than the traditional lending agreements.  And, as shown below, due to Prince's trust, H2 has authority and substantial advantage over him.

The Loan Agreement provided that principal reductions to the Promissory Note were to be made from KAYA's profits.  (Compl. at ¶ 21; Doc. 17-3 at § 1.03.2.)  Naturally, those profits were to be derived from KAYA's operations. (*Id.*)  Prince trusted that H2 would operate KAYA in good faith, to serve their mutual best interests.  (Compl. at ¶ 45.)  Obviously, the more profit KAYA earned,

---

[3] Importantly, the majority of cases dealing with fiduciary duties in the debtor-creditor context focus on the trust reposed in the creditor.  *See e.g. Baylor v. Jordan*, 445 So. 2d 254, 256 (Ala. 1984).  But that script is flipped in this case.  Prince is the creditor, and has been abused by the trust and confidence he reposed in H2.

[4] All of these transaction documents are referenced and defined in the Complaint.  (Compl. at ¶¶ 17-25.)  Moreover, they are all in the record before the Court because they were admitted, without objection, at the preliminary injunction hearing.  (Docs. 17, 17-1 through 17-10.) Because these documents are referenced in, and provide the foundation for, Prince's claims, the Court can consider them in a 12(b)(6) setting.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

the more to be split between H2 and KAYA under to the Loan Agreement.  (Doc. 17-3 at § 1.03.2.)  But all of the control in the relationship belonged to H2, not Prince.  (Doc. 17-2.)

Prince had no ability to influence KAYA's business decisions at all.  H2 decided:  whether KAYA complied with the applicable agreements, whether disclosures were made to Prince, which expenditures were to be made and how they were to be characterized.  (*See generally* Docs. 17-2 and 17-3.)  All of these decisions directly impacted Prince's right to payment, meaning that H2 had the ability to determine when, if and how much KAYA paid Prince.  (*Id.*)  This complete dominion is the type of confidential relationship described in *Bank of Red Bay*.

H2 abused Prince's trust and took advantage of him by causing KAYA to pay Wright and Russell's personal expenses.  (Compl. at ¶ 34.)  It caused KAYA to pay unallowable expenses that benefitted only H2 and its affiliates.  (*Id.*)  And it permitted KAYA to make no-interest intercompany loans to H2 and its affiliates. (*Id.* at ¶¶ 34-35; Doc. 17-10.)  All of these actions had the effect of artificially eliminating any profit to be paid to Prince.  (Compl. at ¶ 36; Doc. 17-9.)

At the 12(b)(6) stage, with all of these facts presumed true and construed in Prince's favor, it is certainly plausible that Prince's relationship with H2 was

6

confidential in nature.  The elements of trust and resulting advantage — hallmarks of the Alabama Supreme Court's definition — are certainly present on the face of Prince's pleadings, and could be borne out through discovery.  Under these circumstances, the Supreme Court has held that plaintiffs, like Prince, should be allowed to proceed, even if the Court believes it "improbable" that Prince will be able to prove these claims at trial.  *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.").  Thus, the Motion should be denied.

**B.      Defendants' motion to dismiss Prince's suppression claim is due to be denied.**

  1.      Prince has sufficiently alleged a duty to disclose.

The duty to disclose material facts arises out of a confidential relationship. *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 787 (11th Cir. 2005); *Gess v. United States*, 909 F. Supp. 1426, 1447 (M.D. Ala. 1995).  So, for the same reasons discussed above, Defendants had a duty to disclose material facts to Prince.  But other types of "special circumstances" also impose a duty to disclose. Id.

*Bank of Red Bay* is again instructive.  482 So. 2d 274.  There, the court looked to its prior decisions, and Dean Prosser's treatise, to explain how the duty to disclose can arise out of special circumstances:

> there has been a rather amorphous tendency on the part of most courts to find a duty of disclosure in cases where defendant has special knowledge or means of knowledge not open to the plaintiff and is aware that the plaintiff is acting under a misapprehension as to facts which would be of importance to him and would probably affect his decision.

*Id.* at 284 (internal citations omitted).  The court also noted commentary from the Fifth Circuit:

> [T]he types of relationships wherein a duty to disclose has been found indicate that the **Alabama courts give little attention to the designation of the relationship, such as vendor-vendee, etc., but instead look to the relative bargaining positions of the parties**.  Where one party has some particular knowledge or expertise not shared by the plaintiff a duty to disclose has been recognized.

*Id.* (internal citations omitted)(emphasis added).  Plainly, the focus of the fact-based inquiry is the non-disclosing party's advantage given its position relative to the other party.   H2 was certainly advantaged, both before and after its acquisition of KAYA.[5]

---

[5] Defendants focus their argument on the period prior to execution of the relevant agreements. (Motion at p. 10.)  Prince's Complaint was not so limited, as the following paragraps describe.

Again, it is important to note that Prince negotiated protections — the "Prohibited Transactions" — into the Loan Agreement to prevent H2 from depleting KAYA's financial assets and/or artificially eliminating the profit from which he was to be paid.  (Compl. at ¶ 23.)  For example, the Transaction Agreement expressly prohibited KAYA from paying any broker fees or commissions in connection with the transaction.  (Doc. 17-2 at §§ 3.20 and 4.4.) But the very day of the closing, Defendants caused KAYA to pay a $200,000.00 fee or commission.  (Compl. at ¶¶ 18-19).  Given the timing of that payment, there is no plausible basis for the Defendants to deny that they intended to engage in Prohibited Transactions when the parties entered into the operative agreements. That type of information — known and only knowable by Defendants — was material to Prince and likely would have affected his decision.  (Compl. at ¶ 53.) Thus, Defendants had a duty to disclose it.  *See LaCoste v. SCI Alabama Funeral Servs., Inc.*, 689 So. 2d 76, 80 (Ala. Civ. App. 1996); *Liberty Nat. Life Ins. Co. v. McAllister*, 675 So. 2d 1292, 1296 (Ala. 1995); *Ex parte Liberty Nat. Life Ins. Co.*, 797 So. 2d 457, 465 (Ala. 2001)

The duty to disclose is even more apparent in the post-closing context.  First, in addition to banning commission and broker fees, the list of Prohibited Transactions also precluded KAYA from making related party loans.  (Compl. at ¶ 23; Doc. 17-3 at § 4.18.)  But as Prince alleged, H2 has caused KAYA to do just

that.  (Compl. at ¶¶ 34-35; Doc. 17-10.)  Worse, H2 is potentially making those loans with money borrowed, in KAYA's name, on KAYA's line of credit with Regions Bank.  (Doc. 17-3 at §§ 2.04, 2.05, VI.)  And Prince's right to repayment **from KAYA** is subordinated to Regions' debt.  (*Id.*)  Had Prince known of these loans, he would have taken action to stop them.  (Compl. at ¶ 50.)

Second, H2 never disclosed the monthly, $20,000.00 payments to 4P, the unallowable costs or other payments on behalf of H2 or its affiliates.  (Compl. at ¶ 49.)  All of those combined to artificially eliminate KAYA's profit, to H2's benefit (and Prince's detriment).  Again, knowledge of these transactions would have prompted Prince to act.  (*Id.* at ¶ 53.)  And it is for precisely that reason that Defendants suppressed that information.

The Loan Agreement expressly required H2 to disclose certain financial records to Prince.  (Doc. 17-3 at §§ 4.03 and 4.07.)  Those records would have, or should have, revealed the commission payments, related-party loans, and unallowable expenses.  (*See e.g.* Doc. 17-10.)  In other words, if disclosed, they would have prompted Prince to act.  But Defendants prevented KAYA from making those disclosures to Prince to forestall his effort to stop them from looting KAYA.  (Compl. at ¶ 53.)

10

Lastly, even if Defendants did not otherwise have a duty to disclose — they did — their speech imposed one.  As the Complaint alleges, Prince has received payments of interest only (with one, minor possible exception).  (Compl. at ¶ 30.)  The purported reason for those interest-only payments was that KAYA had no profit to split with Prince.  (Doc. 7-1 (Declaration of Howard Russell) at ¶ 5 ("Following Hui's acquisition of KAYA, there has only been one quarter of positive cash flow.").)  Under the law, when Defendants told Prince that KAYA had no profit, they assumed the duty not to suppress or conceal facts that materially qualified the facts they stated.  *See Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So. 2d 883 (Ala. 2005); *First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1313 (5th Cir. 1977), rehearing denied 564 F.2d 416, certiorari denied 98 S. Ct 1580.  In other words, they had to tell Prince that there were no profits because they lined their pockets with unallowable expenses, intercompany loans and unnecessary management fees, contrary to the terms of the arrangement between Prince and H2.

As discussed above, Prince has alleged facts that, if true, support a finding of the existence of a confidential relationship and/or special circumstances.  But, regardless, now is not the time to determine whether such a relationship or circumstances actually existed.  Instead, that determination which must be made by weighing the relationship of the parties, the value of the particular fact suppressed,

11

the relative knowledge of the parties, and other circumstances. *See Baker v. Bennett*, 603 So. 2d 928, 935 (Ala. 1992) (overruled on other grounds by *Owen*, 729 So. 2d 834); *Beiersdoerfer v. Hilb, Rogal & Hamilton Co.*, 953 So. 2d 1196, 1208 (Ala. 2006). This fact-based analysis cannot occur at the pleadings stage, which is why none of the "duty to disclose" cases cited by Defendants were decided on motions to dismiss. *See Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 788 (11th Cir. 2005) (affirming summary judgment); *Shutter Shop, Inc. v. Amersham Corp.*, 114 F. Supp. 2d 1218, 1225 (M.D. Ala. 2000) (denying summary judgment); *Simpson v. Sto Corp.*, 951 F. Supp. 202 (M.D. Ala. 1996) (denying summary judgment); *Ex parte Ford Motor Credit Co.*, 717 So. 2d 781 (Ala. 1997) (affirming trial court's entry of summary judgment). The Court should deny the Motion.

> 2.    Prince plead fraudulent suppression with the particularity required by Rule 9(b).

The Defendants are wrong to assert that Prince failed to plead his fraudulent suppression claim with the particularity required by Rule 9(b). (Motion at pp. 11-12.) The Eleventh Circuit has made clear that "Rule 9(b) must not be read to abrogate Rule 8," and "a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755

F.2d 810, 813 n.3 (11th Cir. 1985).  A relaxed standard is appropriate where the defendant is alleged to have concealed the facts that would permit the plaintiff to plead fraud with particularity."  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1298 (4th ed.).  Furthermore, plaintiffs need not plead the exact "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Seville Indus. Mach. v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984).

Prince's Complaint tells Defendants exactly the facts they allegedly suppressed:  (a) that they intended to and did engage in Prohibited Transactions (Compl. at ¶ 49); (b) that they intended to and did pay $20,000.00 per month to 4P (*id.*); (c) that they intended to and did incur substantial, unallowable expenses for their own benefit (*id.*); and (d) that all of the foregoing would negatively impact Prince's ability to be paid from profits (*id.* at ¶ 53).  Prince met his pleading burden.

3.     Defendants misapply the economic loss rule.

Defendants invoke the economic loss rule in a last ditch effort to shield their fraudulent conduct.  (Motion at pp. 12-13.)  Tellingly, the Defendants failed to cite any authority applying that rule to fraud claims.  And that is because, "**the**

**Alabama Supreme Court has only applied the economic loss rule in product liability cases**." *Harbin v. RoundPoint Mortg. Co.*, 2019 WL 7167588, at *4 (N.D. Ala. Nov. 6, 2019) (quoting *Birmingham Emergency Commc'ns Dist. v. TW Telecom Holdings, Inc.*, 2017 WL 11068541, at *4 (N.D. Ala. Mar. 2, 2017)) (emphasis added).

As the Restatement (Third) explains, "the economic loss rule" provides that "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties." *S. Indep. Bank v. Fred's, Inc.*, 2019 WL 1179396, at *16 (M.D. Ala. Mar. 13, 2019) (quoting Restatement (Third) § 3) (emphasis in original).  But, in *Harbin*, **a case Defendants cited,**[6] Judge Proctor expressly rejected the application of the economic loss rule to fraud claims, recognizing that the rule "does not mean that 'purely economic losses can never be recovered' on a tort claim under Alabama law." *Id.* at *5 (quoting *Birmingham Emergency Commc'ns Dist.*, 2017 WL 11068541, at *4).

In this case, Prince does not allege that Defendants negligently negotiated or performed the operative agreements.  Instead, Prince alleges that Defendants fraudulently suppressed material facts they were obligated to disclose by virtue of

---

[6] Motion at p. 13.

his confidential relationship with them.  Accordingly, the economic loss rule does not apply to bar Prince's fraudulent suppression claim.

### C.   Prince Stated a Tortious Interference with Contract Claim Against Wright and Russell.

Defendants emphatically proclaim that Prince's intentional interference claim against Wright & Russell fails because "Eleventh Circuit and Alabama courts have unequivocally recognized that agents or employees of a contracting party *cannot* be strangers to the relevant contracts."  (Motion at p. 15 (emphasis in original).)  Defendants are emphatically wrong.

Courts and commentators alike have recognized that Alabama law permits a cause of action for intentional interference against an individual officer or employee with regard to "business or contractual relations to which their corporation or employer is a party."  *Perlman v. Shurett*, 567 So.2d 1296, 1297 (Ala. 1990) (quoting *Hickman v. Winston Cty. Hosp. Bd.*, 508 So.2d 237, 239 (Ala. 1987)); *see also* Alabama Law of Damages § 36:59 (6th ed.).  To prevail on such a claim, a plaintiff must "show that the defendants acted outside their scope of employment and did so maliciously."  *Golloway v. Bd. of Trustees of Auburn Univ.*, 2017 WL 4011020, at *2 (M.D. Ala. Sept. 12, 2017) (quoting *Perlman*, 567 So. 2d at 1299).  "An action outside of the scope of employment, in this context, is the same as an action outside of the employee's scope of authority."  *Id.* (citing

15

*McGlathery v. Ala. A&M Univ.*, 105 So. 3d 437, 447 (Ala. Civ. App. 2012).  "[I]n order to show malice the plaintiff must make a strong showing of a pattern of interference," which requires "more than an isolated incident" of actions beyond the scope of the defendant's employment.  *Id.*

Prince notes that the Complaint does not use the words "outside the scope of employment" or "malice" to describe Wright and Russell's tortious interference. Nonetheless, the allegations of the Complaint make clear that Wright and Russell intentionally, knowingly, and persistently caused KAYA and H2 to breach their contracts with Prince, even after Prince objected to their conduct.[7]  (Compl. at ¶¶ 32-37.)  The allegations also make clear that Wright and Russell engaged in this conduct, not for KAYA's benefit, or even H2's, but for their own personal gain. (*Id.*)  Under Alabama law, Prince has stated a viable claim for tortious interference with contract against Wright and Russell.

## III.    If There is Any Doubt, the Court Should Allow Prince to Amend.

There are no magic words required to satisfy Rule 12(b)(6).  *See Garrett v. Stanton*, 2008 WL 4853388, at *2 (S.D. Ala. Nov. 7, 2008).  Prince respectfully

---

[7] Under Alabama law, officers and directors of corporations can be liable to creditors if they "fraudulently divert or destroy the corporate assets, which are subject to the payment of corporate debts." *Galactic Employer Servs., Inc. v. McDorman*, 880 So. 2d 434, 439 (Ala. Civ. App. 2003) (internal quotations omitted).  "An act constitutes a fraud on the rights of the creditors if done with the intent to hinder or delay the collection of the claims." *Id.* That is precisely what Wright and Russell did here.

16

submits that its Complaint lays the factual predicate, in sufficient detail, to support all of the claims under attack (and otherwise).  But if there is any doubt, Prince respectfully requests the opportunity to amend his Complaint under Rule 15 and the Court's scheduling order (which permits amendments until June 4, 2020). (Doc. 21.)

## CONCLUSION

WHEREFORE, Prince respectfully requests that the Court deny the Defendants' Motion for Partial Dismissal.

Respectfully submitted this 8th day of May, 2020.

/s/ W. Brad English
W. Brad English
Benjamin L. McArthur
**Attorneys for Plaintiff John Prince**

**OF COUNSEL:**
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street
Huntsville, Alabama 35801
Telephone:  (256) 551-0171
Facsimile:  (256) 512-0119
Email:  benglish@maynardcooper.com
        bmcarthur@maynardcooper.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 8th day of May, 2020, served a copy of the foregoing upon all parties to the matter as follows:

Upon the following, through the Court's electronic case management system:

> Lauren A. Smith, Esq.
> C. Gregory Burgess, Esq.
> Stephanie M. Gushlaw, Esq.
> **LANIER FORD SHAVER & PAYNE P.C.**
> Post Office Box 2087
> Huntsville, Alabama 35804
>
> ***Attorneys for Defendants Hui Huliau,***
> ***Deryl Wright, and Howard Russell***

And upon the following via U.S. Mail, postage prepaid:

> 4P Management Company, LLC
> c/o Deryl Wayne Wright, Registered Agent
> 1500 Wandering Oaks Lane
> Norman, Oklahoma 73026

> /s/ W. Brad English
> Of Counsel