FILED

2020 May-26  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JOHN PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 5:20-cv-00208-LCB |
| | ) | |
| HUI HULIAU, DERYL WRIGHT, and | ) | |
| HOWARD RUSSELL, | ) | |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Rule 12(b)(6) and (7)  of the <u>Federal Rules of Civil Procedure</u>, defendants Hui Huliau ("Hui Huliau"), Deryl Wright ("Wright"), and Howard Russell ("Russell") (collectively, "defendants") hereby submit this brief in support of their motion for dismissal of plaintiff John Prince's ("plaintiff" or "Prince") first amended and restated complaint. (Doc. 29).

## FACTUAL ALLEGATIONS[1]

Prince and others formed KAYA Associates, Inc. ("KAYA") in 2003, and Prince was the owner of 90% of KAYA's stock. (Doc. 29, ¶ 13). On April 29, 2016, Plaintiff entered into a Loan and Security Agreement ("Original Loan") with KAYA

---

[1] Defendants accept as true all well-pled facts contained in the amended complaint for the purposes of this motion only. Defendants reserve the right to contest any factual allegations in future proceedings.

Associates, Inc. ("KAYA") in which Prince agreed to loan KAYA $6,389,201.25, and thereby Briefne Group, LLC ("Briefne") acquired all of KAYA's stock. (Id. at ¶ 16). Subsequently, on September 6, 2017, Briefne, Prince, Hui Huliau, and KAYA entered into the Transaction Agreement ("Transaction Agreement"), whereby Hui Huliau acquired all of KAYA's stock from Briefne, paid Prince $500,000.00, and following a true-up, Prince swept $1,587,928.00 from KAYA's bank account. (Id. at ¶ 17). Also on September 6, 2017, KAYA and Prince entered into the Amended and Restated Loan and Security Agreement ("Amended Loan Agreement") and the Accommodation Pledge Agreement ("Stock Pledge Agreement"). (Id. at ¶¶ 12, 20). The Amended Loan Agreement divides the remaining loan balance into two tranches, Tranche A in the amount of $3,287,500 and Tranche B in the amount of $1,314,201. (Id.). As part of this Amended Loan Agreement, Hui Huliau agreed to execute a Continuing Guaranty ("Continuing Guaranty"). (Id. at ¶ 24).

Plaintiff alleges that KAYA and Hui Huliau breached the Amended Loan Agreement, and other related agreements, by: (1) failing or refusing to deliver the KAYA stock to Prince; (2) failing or refusing to make Tranche A Interest Payments when they became due; (3) failing or refusing to make any Tranche A Principal Payments when they became due; (4) failing to comply with Financial Records Obligations; (5) engaging in and/or causing KAYA to engage in Prohibited Transactions; and (6) otherwise pilfering or depleting KAYA's assets. (Id. at ¶ 41).

2

Plaintiff's amended complaint also asserts additional causes of action including: breach of fiduciary duty (against Hui Huliau); fraudulent suppression (against all defendants); tortious interference with contractual relationships (against Wright, Russell, and 4P); and declaratory judgment. (Id. at ¶¶ 44-62).

On February 28, 2020, the Court entered a Consent Injunction regarding operational control of KAYA Associates, Inc. ("KAYA"), a wholly-owned subsidiary of Hui Huliau organized under the laws of the State of Alabama. (Doc. 14). On May 14, 2020, Hui Huliau moved for Court approval of certain operational changes related to KAYA. (Doc. 34). The motion is opposed by plaintiff, and the Court has set an expedited briefing schedule. (Id. at ¶ 1; doc. 37).

## LEGAL STANDARD

A motion to dismiss for failure to state a claim tests whether the plaintiff has properly stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While the Court must accept well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff, the Court need not accept the truth of legal conclusions merely because they are cast in the form of factual allegations. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 585 (2007) (citation omitted). Pleading a plaintiff's grounds of his entitlement to relief requires more than labels, conclusions, and a recitation of the elements of a cause of action. Id. at 555. While the complaint need not set out "detailed factual allegations, it must provide sufficient factual

amplification 'to raise a right to relief above the speculative level'" and state a claim to relief that is plausible on its face. <u>Wilborn v. Jones</u>, 761 F. App'x 908, 910 (11th Cir. 2019) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" <u>Id.</u> at 679 (citing Fed. R. Civ. P. 8(a)(2)).

A motion to dismiss for failure to join an indispensable party tests whether joinder of a necessary party will destroy the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(7). Under rule 19(a)(1) of the <u>Federal Rules of Civil Procedure</u>, a party must be joined if it has an interest relating to the subject of the action and is so situated that disposing of the action in its absence may impair or impede its ability to protect its interests as a practical matter. Fed. R. Civ. P. 19(a)(1)(B)(i).

## **ARGUMENT**

As demonstrated below, plaintiff's amended complaint should be dismissed, in part, for a variety of reasons. First, the breach of fiduciary duty claim (Count II) fails because plaintiff cannot establish a plausible fiduciary relationship with Hui Huliau.  Second, the fraudulent suppression claim (Count III) fails because (1) defendants were under no duty to disclose; (2) the amended complaint does not

satisfy the particularity requirements of rule 9(b) of the <u>Federal Rules of Civil Procedure</u>; and (3) the economic loss rule precludes recovery in tort when there is an adequate remedy through contract. Third, the tortious interference with contractual relationships claim (Count IV) fails because plaintiff cannot prove that Wright and Russell were "strangers" to the contracts at issue. Accordingly, these claims are due to be dismissed with prejudice. Lastly, plaintiff has failed to join KAYA as an indispensable party under rule 19(a)(1).

## I.   BREACH OF FIDUCIARY DUTY CLAIM FAILS.

Plaintiff's breach of fiduciary duty claim against Hui Huliau must fail as he cannot establish a plausible fiduciary relationship with Hui Huliau. Plaintiff alleges that Hui Huliau, "[b]y virtue of the Loan Agreement, Promissory Note, H2 Guaranty, Stock Pledge Agreement, KAYA Stock Assignment, and/or Prince's interest in the KAYA Stock" owed plaintiff fiduciary duties of good faith, fair dealing, loyalty and due care. (Doc. 29, ¶ 45). Plaintiff alleges that Hui Huliau's disloyal acts and omissions caused him substantial damages. (<u>Id.</u> at ¶ 47). Yet plaintiff's claim is deficient because he fails to show that Hui Huliau, as guarantor to the Amended Loan Agreement, owes him a fiduciary duty.

To sufficiently plead a claim for breach of fiduciary duty under Alabama law, a plaintiff must set forth plausible facts that: (1) a fiduciary duty existed; (2) the defendant breached that fiduciary duty; and (3) that the plaintiff's damages were

proximately caused by the defendant's breach. <u>Regions Bank v. Lowrey</u>, 101 So. 3d 210, 219 (Ala. 2012). "The existence of a fiduciary relationship is a question of law to be decided by the court." <u>Liberty Mut. Ins. Co. v. Fleet Force, Inc.</u>, No. 09-CV-773-CLS-NW, 2012 WL 13024378, at *10 (N.D. Ala. June 20, 2012). A fiduciary relationship typically derives from four scenarios:

> (1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer.

<u>Standifer v. Best Buy Stores, L.P.</u>, 364 F. Supp. 3d 1286, 1296 (N.D. Ala. 2019) (quoting <u>Aliant Bank v. Four Star Invs., Inc.</u>, 244 So. 3d 896, 907 (Ala. 2017)). In regard to the above scenarios, confidence, reliance, and a power disparity are the cornerstones of this analysis. <u>Atkins v. GE Capital Mortg. Servs., Inc.</u>, 993 F. Supp. 1406 (M.D. Ala. 1998) (quoting <u>Power Equip. Co. v. First Alabama Bank</u>, 585 So. 2d 1291, 1298 (Ala. 1991)). Plaintiff cannot establish that a fiduciary relationship with Hui Huliau was formed under any of these legal principles.

### a. Plaintiff has Failed to Allege a Relationship of Trust with Hui Huliau that Resulted in Superiority, Influence, Control, or Advice.

Plaintiff's conclusory allegations that he and Hui Huliau had a relationship of trust are insufficient to survive a motion to dismiss. Generally, a confidential

relationship may arise when trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other, and it appears there is an overmastering influence on the other. Power Equipment Co., 585 So. 2d at 1297. In other words, there must be a significant power disparity between the two parties to support the creation of a fiduciary duty. Here, the amended complaint merely states that "Prince reposed trust and confidence that Hui would abide by its fiduciary duties" without setting forth any facts supporting how this alleged confidence gave plaintiff inferior bargaining power in this arm's-length commercial contracts transaction. (Doc. 29, ¶ 46).

Quite the contrary situation existed in this case as both plaintiff and Hui Huliau were sophisticated and experienced parties enjoying equal positions of power when negotiating the terms of the transaction and the nature of the Amended Loan Agreement. In fact, this was not the first time Prince had engaged in those types of negotiations related to KAYA. He had previously negotiated the sale of KAYA's stock to Breifne, giving him both experience and know-how in transactions of this type. Indeed, noticeably absent from plaintiff's amended complaint are any allegations that Hui Huliau had superiority or influence over Prince, that Hui Huliau assumed control over Prince, or that Hui Huliau had an obligation to act for or provide advice to Prince. Without these additional circumstances, plaintiff has failed to plausibly allege that he placed in Hui Huliau any type of trust or confidence

beyond simply executing certain agreements. Without pleading the existence of trust, confidence, or a disparity in power or control, plaintiff has failed to establish that he and Hui Huliau entered into a fiduciary relationship.

### b. A Debtor-Creditor Relationship is Not a Fiduciary Relationship.

More to the point, the purported fiduciary relationship between Hui Huliau and plaintiff, as asserted in the amended complaint, is not recognized by Alabama law. Plaintiff alleges that the purported fiduciary relationship between Hui Huliau and plaintiff derives from certain agreements. (Doc. 29, ¶ 45). However, "[a]s a general rule, the mere existence of a contract does not create a fiduciary duty." Henok v. Chase Home Fin., LLC, 915 F. Supp. 2d 162, 168 (D.D.C. 2013); see also Pickett v. State Farm Fire & Cas. Co., No. 2:18-CV-00266-RDP, 2018 WL 1609634, at *2 (N.D. Ala. Apr. 3, 2018) ("A fiduciary relationship does not exist simply by virtue of a contract between the insurer and the insured.") (internal citation omitted).

Despite plaintiff's contentions, the Amended Loan Agreement and Continuing Guaranty do not create a fiduciary relationship between him and Hui Huliau.  This is because Alabama law does not imply a fiduciary duty into debtor-creditor relationships. Gulf States Steel, Inc. v. Lipton, 765 F. Supp. 696, 703 (N.D. Ala. 1990), aff'd, 934 F.2d 1265 (11th Cir. 1991); see also Howard v. Bank of New York Mellon, No. CV-09-PWG-1046-S, 2009 WL 10703211, at *5 (N.D. Ala. Aug. 31, 2009), report and recommendation adopted, No. 2:09-CV-1046-PWG-SLB,

2009 WL 10703209 (N.D. Ala. Nov. 23, 2009) ("[T]he traditional view is that the creditor-debtor relationship of a bank and customer . . . does not give rise to fiduciary duties nor create a confidential relationship between the parties."). Federal law similarly recognizes that a debtor-creditor relationship, without more, does not create a fiduciary relationship. RBS Citizens, N.A. v. Sanyou Imp., Inc., No. 11 C 1820, 2011 WL 2712744, at *3 (N.D. Ill. July 13, 2011) ("Whether viewed as a debtor and creditor or guarantor and creditor, no fiduciary relationship exists based on the relationship between Charter One and Yang.") (internal citation omitted); Vill. On Canon v. Bankers Tr. Co., 920 F. Supp. 520, 532 (S.D.N.Y. 1996) (finding no fiduciary relationship arises from a long-standing debtor-creditor or creditor guarantor relationship as alleged in the complaint).

In this case, Prince served as the creditor to KAYA, the debtor, under the Amended Loan Agreement, to which Hui Huliau served as guarantor. (Doc. 29, ¶¶ 16, 20, 24). The creditor-debtor relationship between Prince and Hui Huliau, without more, is insufficient to establish a fiduciary relationship recognized by Alabama law. Without the existence of a fiduciary relationship, plaintiff's breach of fiduciary duty claim fails as a matter of law and must be dismissed.

## II.   FRAUDULENT SUPPRESSION CLAIMS FAILS.

Plaintiff's fraudulent suppression claim fails on multiple grounds, including: (1) plaintiff failed to establish that defendants owed a duty to disclose certain

information; (2) plaintiff's claim lacks the requisite particularity required under Federal Rules of Civil Procedure rule 9(b); and (3) plaintiff's claim is barred under the economic loss rule, as there is an adequate remedy under contract law.

### a. No Duty to Disclose Existed.

To establish a prima facie claim for fraudulent suppression, plaintiff must show: (1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the defendant had actual knowledge of the facts; (4) that concealment or failure to disclose induced the plaintiff to act; and (5) that the defendant's action was the proximate cause of actual harm suffered by the plaintiff. Shutter Shop, Inc. v. Amersham Corp., 114 F. Supp. 2d 1218, 1225 (M.D. Ala. 2000). A party's mere silence as to material facts does not constitute fraud unless that party is under a duty to disclose, which may be established through a confidential relationship between the parties, a request for information, or the particular circumstances of the case. Id.; see also Simpson v. Sto Corp., 951 F. Supp. 202 (M.D. Ala. 1996), aff'd, 145 F.3d 363 (11th Cir. 1998).

Moreover, in commercial transactions involving parties to arm's-length negotiations, the parties have no general obligation to disclose. Simpson, 951 F. Supp. at 206. In the absence of a fiduciary or confidential relationship, courts have discretion to consider the existence of a duty to disclose by examining the relationship of the parties, the relative knowledge of the parties, and the value of the

non-disclosed information. Id. In dispute here are the first and third elements of a claim of fraudulent suppression.

As between Hui Huliau and plaintiff, Alabama law has consistently held that a debtor-creditor relationship does not trigger a duty to disclose, absent a special confidential relationship. Castleberry v. Goldome Credit Corp., 408 F.3d 773, 788 (11th Cir. 2005) (citing Ex parte Ford Motor Credit Co., 717 So. 2d 781 (Ala. 1997)). In Castleberry, the court found that the plaintiffs failed to allege that a special confidential relationship existed beyond a debtor-creditor relationship. Id. The debtor-creditor relationship alone did not create a duty to disclose. Id.

Similarly, plaintiff has likewise failed to allege a special confidential relationship with Hui Huliau. Accordingly, plaintiff has not sufficiently alleged that Hui Huliau had a duty to disclose—an essential element to his fraudulent suppression claim. Furthermore, with respect to Wright, Russell, and 4P, plaintiff has failed to allege **any** facts whatsoever that would create a special confidential relationship which would necessitate a duty to disclose by them. Therefore, this claim as asserted against defendants Wright, Russell, and 4P must also fail.

Even if the Court draws the inference that defendants were under a duty to disclose the material facts detailed in plaintiff's amended complaint, that duty is limited to disclosing facts **known** to defendants at the time of execution of an agreement. Castleberry, 408 F.3d at 788. Plaintiff has pled insufficient facts to

establish defendants' knowledge of facts and their materiality **prior to** the execution of the relevant agreements. Prince alleges that defendants breached their duty to disclose by suppressing the fact that Hui Huliau would not: (1) deliver the KAYA stock to Prince as required by the Stock Pledge Agreement; (2) make Tranche A Interest Payments when they became due under the Amended Loan Agreement and Continuing Guaranty; (3) make any Tranche A Principal Payments when they became due; (4) comply with the Financial Records Obligations; (5) engage in and/or cause KAYA to engage in Prohibited Transactions; and/or (6) otherwise pilfer and deplete KAYA's assets and cash reserves. (Doc 29, ¶ 49). With all of these conclusory allegations, conspicuously absent from plaintiff's amended complaint are any allegations sufficient to establish that, **prior to** the execution of the relevant agreements, any of the defendants had any knowledge of these facts and their materiality. In the absence of facts establishing that defendants owed plaintiff a duty to disclose the alleged suppressed facts and that defendants had knowledge of those facts prior to or at the time of entering into the relevant agreements, plaintiff's fraudulent suppression claim fails and must be dismissed.

**b.  Plaintiff has Failed to Plead His Claim with Particularity.**

The Federal Rules of Civil Procedure require that allegations of fraud meet a heightened pleading standard, beyond the plausibility criteria articulated in Twombly and Iqbal. Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th

Cir. 2010). Pursuant to rule 9(b), a plaintiff alleging fraudulent acts must allege: "the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statements; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997). Additionally, the "plaintiff must allege facts with respect to each defendant's participation in the fraud." Id.

In his amended complaint, plaintiff vaguely alleges that all defendants fraudulently suppressed facts related to the various contractual agreements entered into by Prince, KAYA, and Hui Huliau. (Doc. 29, ¶¶ 48-54). However, the amended complaint does not allege facts sufficient to meet the heightened particularity threshold. The amended complaint sets out six conclusory allegations of suppression of material facts, (id. at ¶ 49), but it does not point to a **single** misrepresentation or concealment that was made by a defendant with knowledge of that fact; it does not detail the time, place, and persons responsible for the alleged suppression; and it does not sufficiently state what each defendant gained by the alleged fraud as required under Rule 9(b). Even viewed in the light most favorable to plaintiff, the amended complaint has failed to allege a right to relief that is plausible on its face.

### c. The Economic Loss Rule Precludes Plaintiff from Recovering Damages for Fraudulent Suppression.

Plaintiff's claim for fraudulent suppression fails for a third reason. To support

this claim, plaintiff relies entirely upon defendants' purported breaches of the relevant contractual agreements. As such, the allegations on which this claim is predicated are ostensibly identical to the allegations that constitute the breach of contract claim. (Compare Doc. 29, ¶ 41 with ¶ 49). Thus, this claim is barred by the economic loss rule.

"The purpose of the economic loss rule is to prevent contract law from being swallowed by tort remedies." Tuscumbia City Sch. Sys. v. Pharmacia Corp., 871 F. Supp. 2d 1241, 1252 (N.D. Ala. 2012). Under this rule, "Alabama does not recognize a tort-like cause of action for the breach of duty created by contract." Harbin v. RoundPoint Mortg. Co., 2019 WL 7167588, at *5 (N.D. Ala. Nov. 6, 2019). There is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between parties, and where there is a contract, parties are expected to defer to the agreement instead of applying the "blunt instrument of tort law". S. Indep. Bank v. Fred's, Inc., 2019 WL 1179396, at *16 (M.D. Ala. Mar. 13, 2019). Plaintiff's purported damages as a result of defendants' alleged suppression of material facts all relate to performance under contractual agreements.  As plaintiff has remedies available to him under the relevant contractual agreements, he is barred from recovering damages under tort law and this claim must be dismissed.

## III.   TORTIOUS INTERFERENCE CLAIM FAILS.

Plaintiff's tortious interference claim against Wright, Russell, and 4P is fatally

flawed in that he failed to allege and cannot prove that Wright, Russell, and 4P are "strangers" to the relevant contractual agreements, as required by Alabama law. Plaintiff alleges that Wright Russell, and 4P knew or should have known that plaintiff, Hui Huliau, and KAYA entered into contractual agreements, and that Wright, Russell, and 4P intentionally and tortiously interfered with the contractual agreements thereby knowingly causing Hui Huliau to breach its contractual obligation.  (Doc. 29, ¶¶ 56-57). However, these allegations are insufficient here.

The Alabama Supreme Court has held that to establish a claim for tortious interference with contractual relations, a plaintiff must prove: "(1) the existence of an enforceable contract; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." Glenn Const. Co., LLC v. Bell Aerospace Servs., Inc., 785 F. Supp. 2d 1258, 1279 (M.D. Ala. 2011). The Alabama Supreme Court has addressed the "stranger" requirement, noting that, while a defendant need not be a signatory to the relevant contracts, a defendant is a party in interest to the relationship "if the defendant has any beneficial or economic interest in, or control over, that relationship." Harris v. ACCC Ins. Co., No. 2:16-CV-636-TFM, 2016 WL 6986637, at *5 (M.D. Ala. Nov. 28, 2016) (citing Walter Energy, Inc. v. Audley Capital Advisors LLP, 176 So. 3d 821, 827 (Ala. 2015). The Alabama Supreme Court adopted the term "participant" for "an individual or entity who is not a party, but

who is essential, to the allegedly injured relationship" and recognized that participants cannot be described as strangers. Id. Moreover, the Eleventh Circuit has recognized four circumstances in which a defendant is not a stranger to a contract:

> (1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contract or relations.

MAC E., LLC v. Shoney's, 535 F.3d 1293, 1297 (11th Cir. 2008).

The Eleventh Circuit and Alabama courts have also unequivocally recognized that agents or employees of a contracting party **cannot** be strangers to the relevant contracts. Johnson v. Wellborn, 418 F. App'x 809, 816 (11th Cir. 2011) (explaining "to state a tortious interference claim, the interfering defendant must be a third party and a stranger to the business relationship; an employee or agent acting on behalf of a contracting party's interests cannot be liable."); Turner v. Am. Fed'n of Teachers Local 1565, 138 F.3d 878, 884 (11th Cir. 1998) (district court granting summary judgment on tortious interference with contract claim against individual defendants finding they were not strangers because they were agents of the employer); Camp v. Corr. Med. Servs., Inc., 668 F. Supp. 2d 1338, 1361 (M.D. Ala. 2009) ("Thus, as agents of the ADOC, the ADOC defendants were not 'strangers'; to Plaintiffs' employment relationship with CMS."); Parsons & Whittemore Enters. Corp. v. Cello

Energy, LLC, 613 F. Supp. 2d 1271, 1282 (S.D. Ala. 2009) (a defendant is not a stranger to a contract if the alleged interferer was an agent of the contracting party); Allied Co. of Wiregrass v. City of Dothan, 191 So. 3d 804, 810 (Ala. Civ. App. 2015) (city employees were not strangers to a contract between city and plaintiff).

Plaintiff alleges that Wright and Russell are the Chief Executive Officer and Chief Financial Officer for Hui Huliau, respectively. (Doc. 29, ¶¶ 3-4). Additionally, plaintiff alleges that Hui Huliau, Wright and Russell are members of 4P. (Id. at ¶ 5). Plaintiff cannot dispute that Wright, Russell, and 4P are agents and employees of Hui Huliau, which owns KAYA. Furthermore, Wright and Russell, as executives of Hui Huliau, and 4P, as a subsidiary of Hui Huliau, undoubtedly have beneficial or economical interest and control over the contracts at issue. Indeed, plaintiff alleges that that day Hui Huliau acquired Kaya, 4P was paid a fee or commission to Hui Huliau. (Id. at ¶ 19). Thus, Wright, Russell, and Hui Huliau cannot be strangers to any contract to which Hui Huliau or KAYA is a party. Accordingly, plaintiff's tortious interference with contractual relationships claim must be dismissed as a result.

## IV.   KAYA IS AN INDISPENSABLE PARTY UNDER RULE 19(A)(1).

Lastly, plaintiff's complaint is due to be dismissed for failing to join KAYA as an indispensable party to this lawsuit. Rule 19 establishes a two-part analysis to determine if a party is indispensable. Laker Airways, Inc. v. British Airways, PLC,

182 F.3d 843, 847 (11th Cir. 1999). First, the Court must determine whether the party should be joined. Second, if the party cannot be joined for some reason, the Court must analyze the factors outlined in rule 19(b) to conclude if the absent party is indispensable. Id.

Here, the first prong is satisfied because KAYA is necessary to the adjudication of the claims involved in the lawsuit. To begin, KAYA is a party to the transactions identified in plaintiff's amended complaint and a signatory on several key documents. (See doc. 29, ¶¶ 17-23). As a party to the transaction, KAYA made several payments to plaintiff. (Id. at ¶ 29). Plaintiff then alleges that KAYA breached its contractual obligations to him. (Id. at ¶ 31-33, 37). These alleged breaches are at the heart of this litigation. Where a subsidiary is a signatory to the contract underlying the litigation and "the plaintiff's claims are largely directed at it," the subsidiary is a necessary party under rule 19(a). See, e.g., E&E Inv., Inc. v. Simmons Co., 169 F.R.D. 467, 472 (D. P.R. 1996). KAYA's alleged breach of contracts to which it is a signatory is a significant focus of the current litigation and, as such, renders KAYA a necessary party to the case.

In addition to serving as a signatory to the key documents involved in this case, KAYA's ability to direct its daily operations has been impacted by the Consent Injunction and plaintiff's objections to Hui Huliau's proposed changes. That is, KAYA is not permitted to take certain actions without plaintiff's approval or an

order by this Court. These day-to-day operations include but are not limited to making personnel changes, renewing or terminating leases, moving facilities, consolidating services to reduce expenses, and other matters. By virtue of the Consent Injunction, KAYA's control over its own operations has been significantly limited without it having a voice in the ongoing litigation. Under the current circumstances, it is undeniable that KAYA's ability to protect its interests has now been impeded as a practical matter. Under the standard created by rule 19(a)(1)(B)(i), this renders KAYA a necessary party to the litigation.

Since KAYA is a necessary party, the Court must turn to whether it can be feasibly joined. Because KAYA is a corporation organized under the laws of the State of Alabama, it is a resident of Alabama for diversity purposes. KAYA's joinder will destroy diversity, robbing the Court of its subject matter jurisdiction.[2]

The last inquiry in this analysis is whether the Court should proceed in "equity and good conscience" without KAYA as a necessary party. Fed. R. Civ. P. 19(b). Rule 19(b) has identified four factors to assist in this determination: (1) the extent to which a judgment may prejudice KAYA or the existing parties; (2) the extent to which any prejudice could be lessened or avoided through certain measures; (3)

---

[2] Defendants initially removed the case to federal court based on the complete diversity that existed at the time of removal. The issues involving KAYA's limitations to conduct its day-to-day operations have recently come into sharp focus with plaintiff's objections to Hui's proposed changes, of which there appears to be no end in sight. As a result, defendants acknowledge the likelihood that the case will be remanded to state court or dismissed and re-filed in state court, the original venue selected by plaintiff.

whether a judgment in KAYA's absence would be adequate; and (4) whether plaintiff would have an adequate remedy if the case were dismissed. Id. It is only after completing this last step of the rule 19 analysis that KAYA can be deemed "indispensable." See, e.g., Hardy v. IGT, Inc., Case No. 2:10-CV-901-WKW, 2011 WL 3583745, at *2 (M.D. Ala. Aug. 15, 2011) (slip copy) (granting motion to dismiss where absent party was deemed both necessary and indispensable).

With regard to these factors, the equities weigh in favor of dismissal. First, any judgment about what KAYA can or cannot do regarding its daily operations will prejudice KAYA in that it will prevent KAYA from exercising the control it would naturally have over its operations. Additionally, the overall fate of KAYA is at stake in that plaintiff has requested this Court to grant him total ownership of KAYA based, in part, on KAYA's breach of the underlying agreements. Second, if the Court awards ownership of KAYA to plaintiff, there is no measure of shaping that relief that would not impair KAYA's interests. Additionally, unless KAYA has a seat at the table, it cannot voice its support of the proposed operational changes. Third, KAYA's presence is necessary to craft an adequate judgment in this case since its operational control is at issue. Lastly, the presence of an alternative forum—state court—weighs heavily in favor of dismissal, particularly since plaintiff preferred state court when he initiated this lawsuit. As a result, these factors favor dismissal in response to the unfeasibility of joining KAYA as a party.

## **CONCLUSION**

For the reasons stated above, defendants respectfully request that the Court enter an order granting their motion for dismissal of plaintiff's amended complaint, resulting in a dismissal, with prejudice, plaintiff's claims for breach of fiduciary duty (Count II), fraudulent suppression (Count III), and tortious interference with contractual relationships (Count IV), and a dismissal, without prejudice, of the remaining claims against respective defendants.

*S/Lauren A. Smith*
Lauren A. Smith (ASB-0432-E48S)
C. Gregory Burgess (ASB-1519-R79C)
Stephanie M. Gushlaw (ASB-1050-F67A)

**Attorneys for defendants Hui Huliau, Deryl Wright, and Howard Russell**

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087
Huntsville, Alabama 35804
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email:  las@lanierford.com
           cgb@lanierford.com
           smg@lanierford.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of May, 2020, I electronically filed the foregoing with Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Brad English
Benjamin L. McArthur
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street, S.W.
Huntsville, Alabama 35801
Telephone Number: (256) 551-0171
Email: benglish@maynardcooper.com
         bmcarthur@maynardcooper.com

*S/Lauren A. Smith*
Lauren A. Smith