FILED

2020 Jul-10  PM 04:50
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JOHN PRINCE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:20-cv-0208-LCB |
| | ) | |
| HUI HULIAU, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

There are several pending motions before the Court, including the defendants' amended motion to dismiss (Doc. 38) and the plaintiff's amended motion for partial summary judgment (Doc. 40).[1] The plaintiff has also filed a motion to strike portions of two declarations that the defendants submitted in response to the motion for partial summary judgment. (Doc. 50). The Court held oral arguments on these motions on June 23, 2020. The Court has determined that ruling on the plaintiff's motions first is the most prudent course as their disposition could narrow the remaining issues. However, the defendants have raised an issue in their amended motion to dismiss that implicates this Court's subject-matter jurisdiction. *See* (Doc. 39, p. 17-20). Accordingly, the Court must first address that issue.

---

[1] The defendants filed a motion to dismiss on March 20, 2020, and the plaintiff filed a motion for partial summary judgment on April 20, 2020. However, both motions were later amended after the plaintiff filed an amended complaint on May 4, 2020. (Doc. 29). Accordingly, the original motions (Docs. 18 and 22) are **MOOT**.

In order to properly understand the issues raised in the parties' motions, a brief summary of the allegations and the procedural posture of the case is helpful.

## I. Background

The plaintiff, John Prince, formed a corporation called KAYA Associates, Inc. ("KAYA"), in 2003.  KAYA provides a variety of services to the federal government including facilities engineering, base operations, information technology, and air traffic control.  According to Prince, he owned 90% of KAYA's stock.  In 2016, KAYA was reorganized, and all of its stock was acquired by Breifne Group, LLC.  As a part of that reorganization, Prince loaned KAYA $6,389,201.25 ("Original Loan") which KAYA used to redeem all of Prince's stock.  As part of the Original Loan, KAYA executed a promissory note and a security agreement in favor of Prince, and granted him a security interest and collateral for the loan he made to the company.

In 2017, defendant Hui Huliau ("HH"), a Hawaii nonprofit corporation, acquired all of KAYA's stock from Breifne pursuant to a multifaceted Transaction Agreement ("Transaction Agreement") that was executed by HH, Breifne, Breifne's owner and managing member[2], KAYA, and Prince.  (Doc. 24-2).  As a part of the Transaction Agreement,[3] Prince gave his approval of HH's acquisition of KAYA.

---

[2] Neither Breifne, Group, LLC, nor its members are parties to this lawsuit.
[3] The Transaction Agreement is rather lengthy and complex.  In an effort to be succinct, the Court will discuss only the parts that are relevant to the resolution of the present motions.

In exchange, HH contributed $500,000 to KAYA which KAYA immediately transferred to Prince as a prepayment under the Original Loan. The Transaction Agreement also allowed Prince to sweep $1,587,928 from KAYA's bank account. Next, Prince agreed to restructure the Original Loan to KAYA. It is this restructuring that is at the heart of this litigation.

The restructuring of the loan required HH, on behalf of KAYA, to enter into an Amended and Restated Loan and Security Agreement ("Loan Agreement"). (Doc. 24-5). The Loan Agreement split KAYA's debt into two tranches: Tranche A in the amount of $3,287,500.00, and Tranche B in the amount of $1,314,201.00. As another part of the Transaction Agreement, HH guaranteed and promised to pay KAYA's indebtedness to Prince under Tranche A of the Loan Agreement. ("HH Guaranty"). (Doc. 24-6). As further security for the loan, HH executed an Accommodation Pledge Agreement ("Stock Pledge Agreement") and a Stock Assignment in favor of Prince. (Doc. 24-7). As a part of the Stock Pledge Agreement, HH was required to transfer the original KAYA stock certificates to Prince to be held as collateral until KAYA's indebtedness and/or HH's guaranty obligations were satisfied in full.

The Loan Agreement, which was a part of the overarching Transaction Agreement, has multiple components. In addition to requiring KAYA and/or HH to make quarterly principal and interest payments to Prince, the Loan Agreement also

3

required KAYA and/or HH to disclose certain financial records and to refrain from engaging in certain prohibited transactions including making loans or advancing money to third parties without Prince's consent.  The Transaction Agreement itself also prohibited certain transactions.

The Loan Agreement also set out the scenarios under which KAYA and/or HH would be in default.  These "Events of Default" included nonpayment and the failure of KAYA and/or HH to observe or perform various covenants set out in the Loan Agreement.  (Doc. 24-5, p. 15-16).[4]  The Stock Pledge Agreement, which was entered into to secure Prince's loan, set out various remedies that would be available to Prince in the event of default.  (Doc. 24-7, p. 4-5).  The parties do not dispute the validity of any of the agreements.

The aforementioned agreements are voluminous and multifaceted.  In describing the agreements above, the Court has sought to provide a mere overview and will provide further, more specific details as they are necessary to fully understand the issues presented.

## II. Prince's Complaint

In his amended complaint, Prince alleged that HH breached the Stock Pledge Agreement, the Loan Agreement, the Transaction Agreement, and the HH Guaranty. Prince also alleged that HH breached its alleged fiduciary duty; that all defendants

---

[4] The cited page numbers refer to the page numbers assigned by the Court's CM/ECF system.

fraudulently suppressed various facts; and that co-defendants Deryl Wright, Howard Russell, and 4P Management Company[5] tortiously interfered with Prince's contractual relationships with HH and KAYA.  Prince is essentially alleging that the defendants are improperly devaluing his collateral, i.e., KAYA, by engaging in transactions that were prohibited by the parties' agreements.  Prince also seeks declaratory and injunctive relief against the defendants.

## III.    Procedural Posture

This case was originally filed in the Circuit Court of Madison County, Alabama, on February 14, 2020.  Prince contemporaneously filed a motion for a temporary restraining order in state court, but the case was removed to this Court later the same day.  Prince did not seek to remand the case to state court or otherwise challenge removal.  However, Prince immediately refiled his motion for a temporary restraining order seeking to enjoin the defendants from taking certain actions with regard to KAYA.  This Court later conducted a hearing on the temporary restraining order that culminated in the parties entering into a consent injunction (Doc. 14) which is still in force.

As noted above, the defendants filed a motion to dismiss on March 20, 2020, and the plaintiff filed a motion for partial summary judgment on April 10, 2020.

---

[5] Deryl Wright is the CEO of Hui Huliau, and Howard Russell is its CFO.  According to Wright and Russell, 4P Management Company, LLC, is wholly owned by HH and provides certain management services to HH and other companies owned by HH.

However, after the plaintiff filed an amended complaint, the Court ordered the parties to refile their respective motions so that each was directed at the operative complaint.  The defendants' amended motion to dismiss, like the original motion, sought dismissal of Counts II, III, and IV, pursuant to Fed. R. Civ. P. 12(b)(6). However, the amended motion to dismiss also sought dismissal of the case in its entirety because, they said, Prince failed to join KAYA as a defendant.  According to the defendants, KAYA is a necessary and indispensable party under Fed. R. Civ. P. 19.  However, because KAYA is an Alabama corporation, its joinder would destroy diversity and divest this Court of subject-matter jurisdiction.  Thus, the defendants have also moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party.  The Court will first address this issue.

## IV.    Defendants' Fed. R. Civ. P. 12(b)(7) Motion

In *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982) the Eleventh Circuit discussed the indispensability of a party:

> Rule 19 states a two-part test for determining whether a party is indispensable.  First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible.  If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue.

As noted above, it is undisputed that the joinder of KAYA is not feasible because it would divest this Court of subject-matter jurisdiction.  Thus, even

6

if the Court were to determine that KAYA should be joined under Fed. R. Civ.

P. 19(a), the Court would then have to proceed to the analysis of the 19(b)

factors.

However, the Court finds that KAYA is not required to be joined under

Rule 19(a).  Fed. R. Civ. P. 19(a) provides:

> A person who is subject to service of process and whose joinder
> will not deprive the court of subject-matter jurisdiction must be
> joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete
>     relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the
>     action and is so situated that disposing of the action in the
>     person's absence may:
>
>     (i)  as a practical matter impair or impede the person's
>          ability to protect the interest; or
>
>     (ii) leave an existing party subject to a substantial risk
>          of incurring double, multiple, or otherwise
>          inconsistent obligations because of the interest.

Thus, pursuant to Fed. R. Civ. P. 19(a)(1)(A), the Court must first determine

whether it can award complete relief among the existing parties in KAYA's absence.

As noted, Prince has alleged two claims against HH: breach of contract and breach

of fiduciary duty.  He has also alleged one count of fraudulent suppression against

all defendants and one count of tortious interference with contractual relationships

against Wright, Russell, and 4P.  The relief that Prince seeks, ultimately, is control

of KAYA, a court order to prevent the defendants from taking actions to diminish the value of KAYA, and monetary damages.  For the reasons that follow, the Court finds that it can award that relief without joining KAYA as a party.

In its motion to dismiss, the defendants allege that KAYA is necessary under Rule 19(a) because "KAYA is a party to the transactions identified in plaintiff's amended complaint and a signatory on several key documents."  (Doc. 39, p. 18).  The Court notes that KAYA is not a party to all of the transactions identified in the complaint.  For example, KAYA is not a party to the HH Guaranty or the Stock Pledge Agreement.  Nevertheless, the defendants argue that because KAYA is a party to the Transaction Agreement and the Loan Agreement, and because KAYA is alleged to have taken certain actions which are at the heart of this litigation, i.e., making payments to Prince and allegedly breaching the Loan Agreement, it is a necessary party.

The defendants also point to the fact that control of KAYA is at issue in this case and that KAYA's ability to conduct its day-to-day operations has been impacted by the consent injunction entered into by the parties.  According to the defendants, "[t]he issues involving KAYA's limitations to conduct its day-to-day operations have recently come into sharp focus with plaintiff's objections to Hui's proposed

8

changes…."[6]  (Doc. 39, p. 19 n. 2).  Essentially, the defense is arguing that KAYA will be prejudiced unless it has a voice in this litigation.

However, as Prince points out in his response to the defendants' motion to dismiss, KAYA's interests are fully represented in this litigation by HH.  It is undisputed that HH owns all of KAYA's stock and, according to HH's CEO, HH "directs all of KAYA's day-to-day activities" (Doc. 34-2, p. 1).  Although KAYA's ultimate fate is to be determined in this litigation, the only two entities that could possibly control it, Prince or HH, are parties to the case.  Thus, the Court will be able "to accord complete relief among the existing parties."  Fed. R. Civ. P. 19(a)(1)(A).

Prince also pointed out that, under the terms of the HH Guaranty, HH "*unconditionally* promise[d] to pay [the plaintiff], … any and all Indebtedness of [KAYA] to [the plaintiff]."  (Doc. 24-6, p. 3)(emphasis added).  The HH Guaranty further provided that "[t]he obligations [under the HH Guaranty] are joint and several, and independent of the obligations of [KAYA], and a separate action or actions may be brought and prosecuted against [HH] whether [such] action is brought against [KAYA] or whether [KAYA] is jointed in any such action or actions."  *Id.*  According to Prince, this makes HH's obligations independent of KAYA's.  The defendants did not address this issue in their reply.

---

[6] Also pending before the Court is a sealed motion for operational changes filed by HH.  (Doc. 34).

The Court agrees with Prince. "Under Alabama law, '[a]n absolute guaranty is an unconditional undertaking by the guarantor to pay a debt at maturity if the principal does not. Under such a guaranty, a creditor is under no obligation to pursue its remedy against the principal as a prerequisite to its right to recover from the guarantor.'" *Piggly Wiggly Alabama Distrib. Co., Inc. v. Bowman Co*., No. 2:12-CV-02079-JHE, 2014 WL 12749006, at *1 (N.D. Ala. June 6, 2014), *quoting Shur-Gain Feed Div. William Davies Co., Inc. v. Huntsville Prod. Credit Ass'n*, 372 So. 2d 1317, 1320 (Ala. Civ. App. 1979). During the oral argument held in this matter, defense counsel conceded that Alabama law allows a creditor to sue a guarantor with no obligation to join the principal debtor. However, defense counsel argued that the present case was distinguishable from *Piggly* Wiggly because KAYA is not only a debtor, it also serves as collateral for the loan, and its ultimate control is at issue. While this is a true statement, the defendants have pointed to no authority or otherwise demonstrated why KAYA's status as collateral makes a difference in this analysis. The defendants also failed to explain how that would invalidate the parties' above-mentioned agreement that Prince had no obligation to join KAYA in a suit against HH. Accordingly, the Court finds Prince had no obligation to join KAYA as a defendant and that complete relief can be accorded among the existing parties.

The same reasoning applies to the Court's consideration of the factors enumerated in Fed. R. Civ. P. 19(a)(1)(B). Although KAYA is a separate entity, it

is a separate entity that is completely owned and controlled by an existing party and cannot be adverse to the sole shareholder who controls it, i.e., Prince or HH. *See Am. Cast Iron Pipe Co. v. Commerce & Indus. Ins. Co.,* 481 So. 2d 892, 896 (Ala. 1985)("Admittedly, American Valve is a separate corporate entity. Nevertheless, ACIPCo owns 100% of the stock of American Valve and thus, as sole stockholder, has the ultimate voting authority and control over American Valve. In Alabama, shareholders are the equitable owners of corporate assets …, and thus exercise ultimate control over the corporation through their voting power to elect directors."). Accordingly, the Court does not find that KAYA has an unrepresented interest in this litigation that will be impacted by proceeding in its absence nor will its absence leave any of the existing parties subject to multiple liabilities or inconsistent obligations. *See Piggly Wiggly Alabama Distrib. Co., Inc. v. Bowman Co*., No. 2:12-CV-02079-JHE, 2014 WL 12749006, at *1 (N.D. Ala. June 6, 2014).

Moreover, even if the Court were to find that KAYA was a necessary party under Rule 19(a), it would still be required to analyze the factors provided in Rule 19(b) to determine whether the case could "in equity and good conscience" continue among the existing parties. Those factors are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

> (2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

As the Court has already determined, KAYA's interests will be fully represented in the present case. Accordingly, the first two factors are given little weight because there will be no prejudice to KAYA if judgment is rendered in its absence. Additionally, as noted above, none of the existing parties will be prejudiced by a judgment rendered in KAYA's absence and complete and adequate relief can be accorded. Thus, the third factor is entitled to no weight.

HH points out that the fourth factor should be entitled to great weight because the plaintiff will have an adequate remedy, i.e., in state court. While this may be true, the Court does not find that dispositive of the issue. The plaintiff wanted to be in state court and, indeed, filed his complaint there. It was the defendants who removed the case to this Court, but who now argue that, perhaps, it should be litigated in state court after all. The Court gives little credit to the defendants' assertion that "[t]he issues involving KAYA's limitations to conduct its day-to-day operations have recently come into sharp focus with plaintiff's objections to Hui's proposed changes…." (Doc. 39, p. 19 n. 2). Those issues have been or should have

been sharply in focus since the parties entered into the consent injunction on February 28, 2020.  Among other things, that injunction limited the amount of management fees that could be charged to KAYA, prevented HH from causing or directing KAYA to make loans or personnel changes without Prince's consent, and prevented the defendants from causing KAYA to make any profit distributions.  The Court finds unavailing the defendants' assertion that it only recently became aware of KAYA's limitations.

Based on the foregoing, the Court concludes that KAYA is not a necessary party under Fed. R. Civ. P. 19(a).  Moreover, even if KAYA were a necessary party, the factors enumerated in Rule 19(b) weigh against dismissal.  Accordingly, the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) is **DENIED**.

As noted, the defendants also moved to dismiss Counts II, III, and IV or the amended complaint.  At the hearing on the motion, plaintiff's counsel orally moved to amend the complaint in order to address certain issues raised by the defendants. Rule 15(a)(2), Fed. R. Civ. P., provides that "[t]he court should freely give leave [to amend] when justice so requires."  The defendants did not object to the plaintiff's request to amend his complaint and the Court finds no reason to disallow an amendment at this stage.  Accordingly, the plaintiff's oral motion for leave to amend his complaint is due to be granted.

## V.    Prince's Motion for Partial Summary Judgment

Prince has also moved for partial summary judgment as to liability on Count I of his amended complaint.[7]  (Doc. 40).  In Count I, Prince alleged that HH breached various contracts that it entered into with him including the Transaction Agreement, the Loan Agreement, the HH Guaranty, the Stock Pledge Agreement, and the Stock Assignment.  (Doc. 29, p. 11-12).  According to Prince, HH is in default under these agreements for, among other things, failing to make certain payments, failing to make required financial disclosures, and engaging in transactions that were prohibited by the parties' agreements.  At issue in the present motion are the alleged prohibited transactions.

## A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323.  Once

---

[7] The defendants did not move to dismiss Count I.

14

the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party

opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## B. Undisputed Facts

The facts surrounding Count I of the amended complaint are largely undisputed. The parties agree that the various agreements they entered into are valid and binding, and there is no dispute regarding the content of the agreements or the consequences for breach. Further, HH admits to the fact that it engaged in the transactions that Prince identified in his amended complaint. However, it asserts that those payments and loans were not the types of transactions that the parties' agreements prohibited. In support, HH has submitted the declarations of Deryl

Wright and Howard Russell, its CEO and CFO respectively.  Prince has moved to strike portions of these declarations.  The Court grants the motion to strike in part and denies it in part.  For clarity, the specific rulings and the reasons therefor will be described along with the Court's discussion of  Prince's motion for partial summary judgment.

## C. Prohibited Transactions

As described above, HH's acquisition of KAYA was governed by the Transaction Agreement.   (Doc. 24-2).   Among other things, the Transaction Agreement provided that certain executed documents would be delivered to Prince at the consummation of the sale of KAYA's stock.  Among those documents were the Loan Agreement and the HH Guaranty under which "[HH] w[ould] guaranty the obligations of [KAYA] under the Loan Agreement[.]"  (Doc. 24-2, p. 4).  Both the Loan Agreement and the HH Guaranty were attached to the Transaction Agreement.

Each of those documents contained various provisions regarding the parties' conduct in relation to the acquisition of KAYA.   The Transaction Agreement provided that "[n]o broker, finder, or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based on arrangements made by or on behalf of any of [KAYA] or any of the Seller Parties."  (Doc. 24-2, p. 19, § 3.20).  The Loan Agreement also provided that "[KAYA] shall not extend or allow to remain outstanding any loans or

advances to [KAYA] and any third party without the prior written consent of [Prince]."  (Doc. 24-5, p. 12, § 4.18).  Prince alleged that HH made a prohibited payment to defendant 4P and made multiple prohibited loans to other companies that HH owned.

The Loan Agreement defined various "Events of Default" to include:

if [KAYA] or [HH] fails in the due observance or performance of any covenant, condition, or agreement on the part of [KAYA] or [HH] to be observed or performed pursuant to the terms of this Agreement, the other Loan Documents, or any other agreement between [KAYA] (or [HH], as applicable) and [Prince], and such failure continues for five (5) business days after written notice thereof is delivered by [KAYA] to [Prince], or discovery by [Prince] of such failure.

(Doc. 24-5, p. 13-14, § VI(c)).  The Stock Pledge Agreement between HH and Prince provides that, "[i]n case of an Event of Default, [Prince] may, in [his] discretion and pursuant to the provisions set out in the Loan Agreement, … (3) transfer the Collateral to [Prince]'s name, or the name of [his] nominee and/or exercise as to the Collateral all the rights, powers and remedies of an owner thereof."[8]  (Doc. 24-7, p. 3).

The parties do not disagree that, if HH and/or KAYA engaged in one or more of the prohibited transactions discussed above, then they would be in default, and Prince would be entitled to transfer ownership of KAYA's stock to his name and

---

[8] The Stock Pledge Agreement provides other remedies to Prince as well.  However, at the hearing on this motion, counsel for Prince indicated that, if the Court found HH to be in default, Prince would exercise the remedy of reclaiming KAYA's stock.

would completely control the company.  However, as will be discussed below, HH contends that the transactions it engaged in were not "prohibited transactions" as described in the various agreements.  Prince disagrees and argues that there is no dispute that HH is in default for, among other things, engaging in prohibited transactions.[9]

### 1.  The Payment to 4P

Prince alleged in his amended complaint that HH engaged in a prohibited transaction when it caused KAYA to pay $200,000 to 4P on the same day that HH acquired KAYA.  According to Prince, this payment was in violation of § 3.20 of the Transaction Agreement which provides that "[n]o broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission" in connection with HH's acquisition of KAYA.

HH does not dispute that it made this payment to 4P.  However, HH claims that the payment to 4P was not a "fee or commission" as contemplated by the Transaction Agreement, and asserted that 4P is a management company wholly owned by HH.  In support of that assertion, HH submitted the sworn affidavit of Deryl Wright, HH's CEO, in which he stated:

---

[9] In his complaint, Prince also alleges other grounds of default.  However, for purposes of this motion, Prince focuses only on the alleged prohibited transactions.

> At the closing of the transaction, Hui Huliau paid $200,000 to 4P Management, Inc., a management company wholly owned by Hui Huliau, for services rendered in support of the transaction and supporting Hui Huliau in transitioning day-to-day control of KAYA. While these funds were paid out of a line of credit held by KAYA, the funds were paid to 4P Management on behalf of Hui Huliau. 4P Management is not a broker, finder, or investment banker that would be prohibited from receiving a fee under the transaction agreement.

(Doc. 47-1, p. 3, ¶ 4). Howard Russell, HH's CFO, made a similar declaration. *See* (Doc. 47-2, p. 5, ¶ 8)(explaining that the payment to 4P was for assistance in transitioning KAYA management to HH and that "4P Management is not a broker, finder or investment banker.").

Prince has moved to strike both of the above-quoted assertions from Wright's and Russell's declarations.  (Doc. 50, p. 4).  According to Prince, both paragraphs 4 and 8 should be stricken insofar as they contain conclusory statements or legal conclusions.  Specifically, Prince seeks to strike Wright's assertion that 4P is not the type of company "that would be prohibited from receiving a fee under the transaction agreement."  Similarly, Prince seeks to strike Russell's declaration that "the payment to 4P Management was not a violation of the transaction agreement…."

Prince is correct in his assertion that declarations based on the declarant's beliefs are improper and cannot create a fact issue.  (Doc. 50, p. 2), *citing Pace v. Capobianco,* 283 F.3d 1275, 1278 (11th Cir. 2002)("Rule

20

56(e)'s personal knowledge requirement prevents statements in affidavits that are based, in part, 'upon information and belief' - instead of only knowledge - from raising genuine issues of fact sufficient to defeat summary judgment."). Similarly, a declarant's conclusory statements are not sufficient to create an issue of fact and, thus, are due to be stricken. *Id.* at 1278-79. *See also Talley v. Triton Health Sys., LLC,* No. 2:14-CV-02325-RDP, 2016 WL 4615627, at *7 (N.D. Ala. Sept. 6, 2016)("Federal Rule of Civil Procedure 56 is clear that affidavits or depositions containing conclusory arguments, as opposed to statements of fact based on personal knowledge, are improper.").  The Court agrees and **GRANTS** Prince's motion to strike Wright's declaration that "4P Management is not a broker, finder, or investment banker that would be prohibited from receiving a fee under the transaction agreement."  Similarly, the Court **GRANTS** Prince's motion to strike Russell's declaration that "the payment to 4P Management was not a violation of the transaction agreement." Those statements draw legal conclusions, i.e. that the transaction at issue was not a violation of the agreement, and are consequently insufficient to withstand a motion for summary judgment. *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005)("mere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than

personal knowledge, are insufficient to withstand a motion for summary judgment.").

However, the remaining portions of those paragraphs assert matters that Wright and Russell, as CEO and CFO of HH, would have knowledge of. Specifically, their declarations that HH paid $200,000 to 4P, that 4P is a management company, and that the payment was intended to be for services in relation to KAYA's transition to HH ownership are not legal conclusions but facts that could be admissible. "Although [conclusory testimony] may be subject to a motion to strike, the 'court need not strike the entire affidavit or deposition, rather it may strike or disregard the improper portions and consider the remainder of the testimony.'" *Id., quoting Walton v. Neptune Tech. Grp., Inc.,* No. 08-cv-5, 2009 WL 3379916, at *1 (M.D. Ala. Oct. 19, 2009). Accordingly, the Court declines to strike those particular assertions.

The Court finds that Wright's and Russell's declarations regarding the purpose of KAYA's payment to 4P create a genuine issue of material fact that precludes summary judgment on the issue of the payment to 4P. Viewing the facts in the light most favorable to HH, as the Court is required to do, the Court finds that a reasonable jury could conclude that the $200,000 payment was used by 4P for purposes that were not prohibited by the transaction agreement, i.e. that the payments were for 4P's services in transitioning

KAYA management to HH.  To be sure, the Transaction Agreement did not prohibit HH from causing KAYA to expend any money at all.  Rather, it prohibited the payment of a particular type of fee.  Wright's and Russell's assertions that the payment to 4P was a fee for services as opposed to a commission or finder's fee is an issue of fact to be resolved at trial. Accordingly, Prince's motion for summary judgment as to that particular issue is **DENIED**.

### 2.  The Loans to HH's Sister Companies

Prince also alleged that HH is in default based on loans that HH made to various sister companies.  According to Prince, HH caused KAYA to make zero-interest loans totaling approximately $2,000,000 in 2018 and 2019 to HH's sister companies.  Again, HH does not dispute that these loans were made, nor do they dispute that the loans were made without Prince's consent.  Rather, HH argues that because the loans were intercompany loans between companies that HH owns, they were not prohibited third-party loans as contemplated in the Loan Agreement. According to HH, the "Loan Agreement between KAYA and [Prince] prohibited loans to third parties, but that did not include companies owned by Hui Huliau."  The Court finds this argument unavailing.

As noted, the Loan Agreement provided that KAYA "shall not extend or allow to remain outstanding any loans or advances to [KAYA] and any third party without

the prior written consent of [Prince]."  (Doc. 24-5, p 14, § 4.18).  HH admits to Prince's allegation that it "caused KAYA to loan more than $1.9 million to [HH's] 'sister companies' in 2018 and 2019 using funds drawn from KAYA's line of credit with Regions Bank."  (Doc. 47, p. 5)(admitting to facts asserted by Prince in his motion for partial summary judgment).  HH also admits to Prince's allegation that it failed to obtain Prince's consent for these loans but maintains that such consent was not required.  *Id.*

In support of their argument, HH relies on the declaration of Howard Russell. According to Russell, he and Prince discussed "the way Hui Huliau would provide integrated accounting and back office services to KAYA, which would reduce KAYA's expenses and increase profitability."  (Doc. 47-2. p. 2).  Russell claimed: "There is no question in my mind that Prince understood and desired Hui Huliau" to provide those accounting and back office services.  *Id.* at p. 4.  Russell then admitted that KAYA extended lines of credit to other companies owned by HH.  However, Russell stated, "[n]one of these companies are third parties in the sense that they are all owned by Hui Huliau and operated through common management.  Use of KAYA's line of credit by a Hui Huliau-owned company is not the type of third-party loan that the parties intended to prohibit in the Loan Agreement."  *Id.*  Russell further asserted that the type of prohibited transaction contemplated by the Loan Agreement "relates to loans to an entity that is not owned by Hui Huliau."  *Id.*

24

Russell's conclusory allegations that "none of [HH's sister] companies are third parties" as contemplated by the Loan Agreement as well as his statement that these loans were "not the type of third-party loan that the parties intended to prohibit in the Loan Agreement" are due to be stricken. As noted in the previous subsection, such conclusory allegations are insufficient to create an issue of fact that would survive summary judgment. *See Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005). Similarly, Russell's supposition as to what Prince understood about the loans is speculative and not based on personal knowledge. Accordingly, those assertions are due to be stricken as well. *See Pace v. Capobianco,* 283 F.3d at 1278.

The remainder of the affidavits that HH submitted contain no assertions that, if true, would demonstrate a genuine issue of material fact as to whether HH was in default. Both parties agree that the Loan Agreement was between two parties, i.e. KAYA and Prince, and both parties agree that HH caused KAYA to extend loans to companies that were not parties to the Loan Agreement. The Court finds no ambiguity in the term "third party." "Third party" is defined as follows: "Someone who is not a party to a lawsuit, agreement, or other transaction but who is usu[ally] somehow implicated in it; someone other than the principal parties." *Black's Law Dictionary* (11th ed. 2019). There is no dispute that HH's sister companies were not parties to the Loan Agreement. Therefore, there is no genuine issue of material fact

that HH caused KAYA to extend a loan to a third party in breach of § 4.18 of the Loan Agreement.

It is well settled that, under Alabama law, "[a] breach of contract claim requires a party to show that a valid contract existed; the plaintiff's performance under the contract; the defendant's nonperformance; and damages." *Cole v. Owners Ins. Co.*, 326 F. Supp. 3d 1307, 1320–21 (N.D. Ala. 2018). As noted above, there is no dispute that a valid contract existed. Additionally, HH does not contend that Prince failed to perform under the contract or that he suffered no damages. HH's only argument was that its actions did not constitute nonperformance. However, as discussed above, HH's act of causing KAYA to make third-party loans was a breach of the Loan Agreement that constituted nonperformance. Accordingly, Prince's motion for summary judgment as to Count I of his first amended complaint is due to be granted insofar as it alleged that HH breached the Loan Agreement by causing KAYA to extend prohibited loans to third parties.

The Court also notes that both Wright's and Russell's declarations contain allegations suggesting that Prince was aware of the third-party loans in question but voiced no objection. Specifically, paragraphs 6 of Wright's declaration asserted that Prince was obtaining inside information about KAYA from his son, Brendan Prince, who served as general counsel for HH. According to Wright,

> [B]ased on the preliminary findings of the investigation, *it appears* that, soon after the purchase of KAYA by Hui Huliau, Brendan Prince began

providing Mr. Prince inside information that was not authorized by Hui Huliau and was in direct conflict to his role as general counsel to Hui Huliau.  Based on these communications, *it is my belief* that Mr. Prince was well informed about the financial condition and day-to-day operations of KAYA.

(Doc. 47-1, p. 4)(emphasis added).  This statement, on its face, demonstrates that it is not based on personal knowledge.  Accordingly, it is due to be stricken.  *See Pace v. Capobianco,* 283 F.3d at 1278.

However, even if Wright's and Russell's statements about what the parties understood were to be considered, Prince would still be entitled to summary judgment.  The various agreements in this case are comprised of over one hundred pages and are detailed and nuanced.  Further, the parties were represented by competent counsel when entering into the agreements.  Had the parties intended to allow KAYA to extend loans to HH's sister companies, they could have provided for it in one or more of the agreements.  However, they did not.  As such, the Loan Agreement, as written, unambiguously provides that KAYA shall not extend loans to third parties.  No amount of discovery will change that fact.  By causing KAYA to extend these loans, HH defaulted under the Loan Agreement, and Prince is entitled to the remedies provided for such a breach.

The Court also notes that, in HH's response to Prince's motion for summary judgment, it argues that summary judgment is premature because discovery has not been completed.  According to HH, "[d]iscovery is vitally necessary to determine

27

not only whether Hui Huliau in fact breached the loan agreement in the manner alleged by plaintiff but also whether plaintiff waived any such breach, is otherwise estopped from declaring a breach, and other affirmative defenses properly available to Hui Huliau." (Doc. 47, p. 11). However, the agreements entered into by the parties speaks to these very arguments. The Court notes that the Stock Pledge Agreement contains the following provision:

> Waiver. Failure of either party at any time to require performance of any provision of this Agreement shall not limit the party's right to enforce the provision, nor shall any waiver of any breach of any provision be a waiver of any succeeding breach of any provision or a waiver of the provision itself for any other provision.

(Doc. 24-7, p. 5). The Loan Agreement contains a similar provision. (Doc. 24-5, p. 20)("Neither any failure nor any delay on the part of [Prince] in exercising any right, power, or privilege hereunder, under the Amended and Restated Note, or under the other Loan Documents shall operate as a waiver thereof...."). Again, no amount of discovery will change the unambiguous terms contained in the parties' agreement. Therefore, summary judgment on this particular issue is not premature.

## VI.   Conclusion

For the foregoing reasons, HH's motion to dismiss (Doc. 38) is **DENIED** insofar as it seeks dismissal for failure to join an indispensable party. The motion

remains pending as to Counts II, III, and IV.  However, the Court hereby **GRANTS** Prince leave to file an amended complaint.

Prince's motion for partial summary judgment (Doc. 40) is **GRANTED** for the reasons explained above.  Prince's motion to strike (Doc. 50) is **GRANTED IN PART** as to the statements identified above and is **DENIED AS MOOT** for any remaining statements as the Court need not consider them in ruling on the present motion.  Further, the original motion to dismiss (Doc. 18) and motion for partial summary judgment (Doc. 22) are **DENIED AS MOOT**.

Also pending before the Court is HH's sealed motion for approval of operational changes.  (Doc. 34).  In his sealed response to that motion, Prince asserted that, if summary judgment were granted in his favor as to the breach-of-contract issue, he would exercise his remedy of taking control of KAYA's stock, thereby mooting the issue raised in HH's motion for operational changes.  (Doc. 45, p. 4).  The parties are hereby **ORDERED** to submit a joint status report within 7 days regarding the disposition of KAYA's stock and how that impacts the motion for operational changes.

A separate order will be entered.

**DONE** and **ORDERED** July 10, 2020.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE