FILED
2020 Jul-13  PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| JOHN PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 5:20-cv-00208-LCB |
| | ) | |
| HUI HULIAU, DERYL WRIGHT, and | ) | |
| HOWARD RUSSELL, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT

For answer to the first amended complaint of plaintiff John Prince ("plaintiff" or "Prince"), defendants Hui Huliau ("Hui Huliau"), Deryl Wright ("Wright"), and Howard Russell ("Russell") (collectively, "defendants") state as follows:

### PARTIES

1.     Upon information and belief, Defendants admit the allegations contained in paragraph 1 of the complaint.

2.     In response to the allegations contained in paragraph 2 of the complaint, defendants specifically admit that Hui Huliau is a Hawaiian 501(c)(3) federally chartered Nonprofit Corporation that is headquartered in Waianae, Hawaii.  Except as expressly admitted, each and every remaining allegation contained in paragraph 2 are denied.

3.     Defendants admit the allegations contained in paragraph 3 of the complaint.

4.     Defendants admit the allegations contained in paragraph 4 of the complaint.

5.     Defendants admit the allegations contained in paragraph 5 of the complaint.

6.     The allegations in paragraph 5 are not allegations of fact that require a response.  To the extent a response is required, defendants admit the allegations contained in paragraph 6.

7.     Defendants deny each and every allegation contained in paragraph 7 of the complaint.

## JURISDICTION AND VENUE

8.     In response to the allegations contained in paragraph 8 of the complaint, defendants state that they do not challenge the Court's subject matter jurisdiction in this case at this time.

9.     In response to the allegations contained in paragraph 9 of the complaint, defendants state that they do not challenge venue in this case.

10.     In response to the allegations contained in paragraph 10 of the complaint, defendants state they do not challenge the Court's personal jurisdiction over them in this case.

11.     In response to the allegations contained in paragraph 11 of the complaint, defendants specifically admit that the terms of the Continuing Guaranty, entered between Hui Huliau and Prince on August 31, 2017 ("Continuing Guaranty"), are in writing and speak for themselves. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 11.

12.     In response to the allegations contained in paragraph 12 of the complaint, defendants specifically admit that the terms of the Accommodation Pledge Agreement, entered between Hui Huliau and Prince on September 6, 2017 ("Stock Pledge Agreement"), are in writing and speak for themselves.  Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 12.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

13.     Upon information and belief, defendants admit the allegations contained in paragraph 13.

14.     Upon information and belief, defendants admit the allegations contained in paragraph 14.

15.     In response to the allegations contained in paragraph 15 of the complaint, defendants specifically admit that KAYA Associates, Inc. ("KAYA") was a participant in the 8(a) Business Development Program.   Defendants specifically admit that KAYA was a participant in the 8(a) Business Development

3

Program for nine (9) years, upon which KAYA's 8(a) eligibility expired.  Except as expressly admitted, each and every remaining allegations contained in paragraph 15 is denied.

16.    In response to the allegations contained in paragraph 16 of the complaint, defendants specifically admit that any and all agreements between Briefne Group, LLC ("Briefne"), KAYA, and Prince (the "Original Loan Documents") are in writing and speak for themselves. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 16.

17.    In response to the allegations contained in paragraph 17 of the complaint, defendants specifically admit that on September 6, 2017, Briefne, Prince, Hui Huliau, and KAYA entered into the Transaction Agreement, whereby Hui Huliau acquired all of KAYA's stock from Breifne, paid Prince $500,000.00, and following a true-up, Prince swept $1,587,928.00 from KAYA's bank account. Except as expressly admitted, each and every remaining allegations contained in paragraph 17 is denied.

18.    In response to the allegations contained in paragraph 18 of the complaint, defendants specifically admit that the terms of the Amended and Restated Loan and Security Agreement, entered between Prince and KAYA on or about September 6, 2017 ("Amended Loan Agreement"), are in writing and speak for themselves. Defendants specifically admit that the terms of the Amended and

4

Restated Promissory Note, executed by KAYA on September 6, 2017 ("Amended Promissory Note"), are in writing and speak for themselves. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 18.

19.    In response to the allegations contained in paragraph 19 of the complaint, defendants specifically admit that KAYA made a $200,000 payment for services related to the transition of KAYA's ownership. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 19.

20-23.         In response to the allegations contained in paragraphs 20 through 23, inclusive, of the complaint, defendants specifically admit that the terms of the Amended Loan Agreement are in writing and speak for themselves. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraphs 20 through 23, inclusive.

24.    In response to the allegations contained in paragraph 24 of the complaint, defendants specifically admit that the terms of the Continuing Guaranty are in writing and speak for themselves. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 24.

25-26.         In response to the allegations contained in paragraphs 25 and 26 of the complaint, defendants specifically admit that the terms of the Stock Pledge

5

Agreement are in writing and speak for themselves.  Defendants specifically admit that on August 21, 2017, Hui Huliau executed the Assignment (Separate) Form Certificate ("Assignment Certificate"), which is in writing and speaks for itself. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraphs 25 and 26.

27.     In response to the allegations contained in paragraph 27 of the complaint, defendants specifically admit that defendants have delivered to Prince the original KAYA stock certificates. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 27.

28.     In response to the allegations contained in paragraph 28 of the complaint, defendants specifically admit that the terms of the Stock Pledge Agreement are in writing and speak for themselves.  Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 28.

29-30.         In response to the allegations contained in paragraphs 29 and 30 of the complaint, defendants specifically admit that they made quarterly Tranche A interest payments and single Trach A principal payment through June 2019. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraphs 29 and 30.

31.     Defendants deny each and every allegation contained in paragraph 31 of the complaint.

6

32.     In response to the allegations contained in paragraph 32 of the complaint, defendants specifically admit that Hui Huliau received an August 15, 2019 letter from Prince's counsel, attached as Exhibit A to the Complaint, which is in writing and speaks for itself. Defendants specifically admit that in August of 2019, Russell and Prince participated in a telephone conference, and that on September 4, 2019, Russell and Prince participated in an in-person meeting. Except as expressly admitted, each and every remaining allegation contained in paragraph 32 is denied. Defendants admit that Hui Huliau made quarterly Tranche A Interest Payments to Prince following September 4, 2019. Except as expressly admitted herein, the allegations contained in Paragraph 30 are denied.

33.     In response to the allegations contained in paragraph 33 of the complaint, defendants specifically admit they made quarterly Tranche A interest payments to Prince. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 33.

34.     Defendants deny each and every allegation contained in paragraph 34 of the complaint.

35.     In response to the allegations contained in paragraph 35 of the complaint, defendants specifically admit that Hui Huliau provided KAYA's consolidated financial statements for the fiscal year ended December 31, 2018.

Except as expressly admitted, each and every remaining allegation contained in paragraph 35 is denied.

36.    In response to the allegations contained in paragraph 36 of the complaint, defendants specifically admit that the February 13, 2020 email correspondence from Russell to Prince is in writing and speaks for itself. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 36.

37.    In response to the allegations contained in paragraph 37 of the complaint, defendants specifically admit that Wright and Russell knew that Prince entered into the Transaction Agreement, Loan Agreement, Promissory Note, Hui Guaranty, Stock Pledge Agreement, and KAYA Stock Assignment. Except as expressly admitted, defendants deny each and every remaining allegation contained in paragraph 37.

38.    Defendants deny each and every allegation contained in paragraph 38 of the complaint.

## FIRST CAUSE OF ACTION
(Breach of Contract Against Hui Huliau)

39.    In response to paragraph 39 of the complaint, defendants incorporate by reference their previous responses in paragraphs 1 through 38, inclusive, as if fully stated here.

8

40-43.     Defendants deny each and every allegation contained in paragraphs 40 through 43, inclusive, of the complaint.

## SECOND CAUSE OF ACTION
(Breach of Fiduciary Duty Against Hui Huliau)

44.     In response to paragraph 44 of the complaint, defendants incorporate by reference their previous responses in paragraphs 1 through 38, inclusive, as if fully stated here.

45-47.     Defendants deny each and every allegation contained in paragraphs 45 through 47, inclusive, of the complaint.

## THIRD CAUSE OF ACTION
(Fraudulent Suppression Against All Defendants)

48.     In response to paragraph 48 of the complaint, defendants incorporate by reference their previous responses in paragraphs 1 through 38, inclusive, as if fully stated here.

49-54.     Defendants deny each and every allegation contained in paragraphs 49 through 54, inclusive, of the complaint.

## FOURTH CAUSE OF ACTION
(Tortious Interference with Contractual Relationships Against Wright and Russell)

55.     In response to paragraph 55 of the complaint, defendants incorporate by reference their previous responses in paragraphs 1 through 38, inclusive, as if fully stated here.

56-59.   Defendants deny each and every allegation contained in paragraphs 56 through 59, inclusive, of the complaint.

## FIFTH CAUSE OF ACTION
(Declaratory Judgment)

60.   In response to paragraph 60 of the complaint, defendants incorporate by reference their previous responses in paragraphs 1 through 38, inclusive, as if fully stated here.

61-62.   Defendants deny each and every allegation contained in paragraphs 61 and 62 of the complaint.

## SIXTH CAUSE OF ACTION
(Injunctive Relief)

63.   In response to paragraph 63 of the complaint, defendants incorporate by reference their previous responses in paragraphs 1 through 38, inclusive, as if fully stated here.

64-69.   Defendants deny each and every allegation contained in paragraphs 64 through 69, inclusive, of the complaint.

## RELIEF

In response to the request for relief, defendants deny that plaintiff is entitled to the requested relief or any relief whatsoever.

## ADDITIONAL DEFENSES

### First Affirmative Defense

Plaintiff's complaint should be dismissed, in whole or in part, to the extent that it fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are estopped, in whole or in part, against defendants.

### Third Affirmative Defense

Plaintiff's claims are waived, in whole or in part, against defendants.

### Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### Fifth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of pari delicto.

### Sixth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of impossibility.

### Seventh Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

### Eighth Affirmative Defense

Plaintiff is not entitled to any judgment against defendants, and plaintiff is not entitled to recover any damages, interest, costs, attorney's fees, or any other relief whatsoever from defendants.

### Ninth Affirmative Defense

To the extent that plaintiff has suffered any legally cognizable damage or injury, such damage or injury was caused by, and is the responsibility of, individuals and/or entities other than defendants.

### Tenth Affirmative Defense

All of defendants' actions or omissions with respect to the matters at issue in this case were reasonable, necessary, legally protected, and justified under the circumstances.  Therefore, defendants have no liability to plaintiff.

### Eleventh Affirmative Defense

Some or all of plaintiff's claims are barred by the applicable statutes of limitation.

### Twelfth Affirmative Defense

Plaintiff has failed to plead his fraud claims with sufficient clarity and particularity as required by rule 9(b) of the Federal Rules of Civil Procedure.

### Thirteenth Affirmative Defense

Plaintiff's suppression claims are barred because defendants did not owe a duty to disclose to plaintiff.

### Fourteenth Affirmative Defense

Defendants assert that an award of punitive damages in this case would serve no purpose for which punitive damages are awarded in Alabama.

### Fifteenth Affirmative Defense

Defendants deny engaging in any conduct entitling plaintiff to recover punitive damages.

### Sixteenth Affirmative Defense

Plaintiff is not entitled to recover punitive damages under the standards set forth in section 6-11-20 of the Alabama Code.

### Seventeenth Affirmative Defense

Defendants, in the event they are found liable to plaintiff, are entitled to a set-off consisting of the amount of damages they have incurred as a result of wrongful action by plaintiff.

### Eighteenth Affirmative Defense

Plaintiff's breach-of-contract claim is barred, in whole or in part, by his failure to satisfy all conditions precedent.

### Nineteenth Affirmative Defense

Some or all of plaintiff's claims are barred by the Economic Loss Rule.

### Twentieth Affirmative Defense

Plaintiff's breach-of-contract claim is barred, in whole or in part, because the contracts at issue are not valid or enforceable.

Defendants reserve the right to assert additional defenses as discovery progresses in this case, including but not limited to a Notice of Indemnification Loss pursuant to Section 8.5 of the Transaction Agreement. To the extent that any of the allegations in the complaint have not been expressly admitted or denied, they are denied and strict proof of each such allegation is demanded.

### COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Counterclaim plaintiff Hui Huliau files this counterclaim against counterclaim defendant John Prince and third-party complaint against third-party defendants Brendan Prince and Steven Johnson, and alleges as follows:

### PARTIES

1.     Hui Huliau is a Hawaiian 501(c)(3) federally chartered Nonprofit Corporation that is headquartered in Waianae, Hawaii.

2.     Prince is an adult individual residing in Marshall County, Alabama.

3.     Brendan Prince is an adult individual residing in Madison County, Alabama.

14

4.     Steven Johnson is an adult individual in Woodford County, Kentucky.

## JURISDICTION AND VENUE

5.     The Court has supplemental subject matter jurisdiction over this action under 28 U.S.C. § 1367.

6.     Prince is subject to the personal jurisdiction of this Court because he initiated this lawsuit against defendants and is a resident of the state of Alabama.

7.     Brendan Prince is subject to the personal jurisdiction of this Court because he is a resident of Alabama.

8.     Johnson is subject to the personal jurisdiction of this Court because the claims arise out of or relate to his contacts with Alabama. Additionally, Johnson has maintained continuous and systematic contact with Alabama. Among other things, Johnson was employed by KAYA, an Alabama company headquartered in Alabama; he maintained a residence in Alabama for at least two years during his employment with KAYA; he routinely and frequently traveled to Alabama for business purposes; he submitted a declaration to the Court in support of Prince in this lawsuit; and he attended the February 24, 2020 hearing in Alabama in anticipation of testifying on behalf of Prince.

9.     Venue is proper under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

### Background on Hui Huliau and KAYA

10.    Formed in 2011, Hui Huliau is a Native Hawaiian 501(c)(3) organization that operates for-profit companies to sustain its community enrichment programs.

11.    Hui Huliau currently operates eleven for-profit companies, including KAYA Associates, Inc. ("KAYA"). Some of these for-profit companies provide support services to Hui Huliau and its wholly-owned subsidiaries.

12.    In 2003, Prince and others formed KAYA, an Alabama corporation headquartered in Huntsville, Alabama. Prince owned 90% of KAYA's stock.

13.    At some point, KAYA was certified as an 8(a) company under the U.S. Small Business Administration's 8(a) program. This allowed KAYA to compete for certain contracts that were set aside for 8(a) companies.

14.    KAYA's 8(a) certification and eligibility expired in or around 2012.

### Sale of KAYA to Briefne

15.    In April 2016, Briefne Group, LLC ("Briefne") acquired all of KAYA's capital stock. As part of the transaction, Prince loaned KAYA $6,389,201.25 to redeem his stock.

16.    Prince remained involved in the operations and control of KAYA after the Briefne acquisition.

16

17.     In April 2017, Prince was informed that KAYA's valuation was negative.

18.     Because KAYA's valuation was negative and its 8(a) certification had expired, Prince began looking for a new buyer for KAYA.

### Sale of KAYA to Hui Huliau

19.     Prince contacted Hui Huliau to gauge its interest in purchasing KAYA.

20.     As a Native Hawaiian Organization, Hui Huliau could extend the 8(a) certifications of any of its subsidiaries to KAYA as long as it owned a majority of KAYA's stock.

21.     Additionally, at the time, Hui Huliau owned several companies and was establishing a framework that could provide efficient and cost-effective back office support to KAYA.

22.     In July 2017, Prince and Howard Russell, Hui Huliau's Chief Financial Officer, began having discussions about Hui Huliau purchasing KAYA.

23.     During these discussions, Prince promised to assist Hui Huliau in growing business for KAYA. This is standard practice for Hui Huliau when it acquires businesses, which Prince knew about through his discussions with Russell. Prince repeatedly confirmed his commitment to use his efforts to drive business to KAYA. In particular, Prince indicated he had connections and relationships within the government contracting community that he would leverage on behalf of KAYA

17

and Hui Huliau. Prince expressed disappointment that he did not have an 8(a) outlet for his business development efforts before Hui Huliau purchased KAYA.

24.     Despite his promises to do so, Prince made no discernable effort to assist KAYA or any other Hui Huliau-related entity to develop business.

25.     Additionally, Prince did not disclose that he had been informed by a business appraiser that KAYA had a negative valuation in April 2017. Instead, Prince provided a valuation of KAYA by the same appraiser from 2015 that he knew was no longer accurate.

26.     Prince provided Hui Huliau with KAYA's financials during the course of the discussions. KAYA's financials improperly recorded year-end bonuses for certain employees, which resulted in inflated revenues and profitability on KAYA's financial statements.

27.     Hui Huliau relied, significantly, on Prince's promises to drive business to KAYA, the 2015 valuation provided by Prince, and KAYA's financials in making the determination to purchase KAYA.

28.     As part of these discussions, Prince and Russell discussed the use of integrated accounting back office services to reduce KAYA's expenses and increase profits. These services included management, accounting, business development, employment benefits administration, and other necessary support. Prince and

18

Russell discussed Hui Huliau's plan for KAYA to serve as the hub for Hui Huliau's emerging back office support framework.

29.    Prince communicated that he was eager for Hui Huliau to provide integrated accounting and other back office support to KAYA.

30.    Because certain contract opportunities would only be available before the U.S. Government's fiscal year ended on September 30, 2017, Prince rushed Hui Huliau through the purchase transaction. This prevented Hui Huliau from conducting a meaningful and thorough due diligence process. As a result, Hui Huliau had to rely even more on the promises and representations made by Prince.

31.    On September 6, 2017, Hui Huliau purchased all of KAYA's stock as part of a purchase transaction ("Transaction").

32.    Part of the Transaction involved a restructuring between Prince and KAYA related to the previous indebtedness created by KAYA's sale to Briefne ("Loan Agreement"). Because Hui Huliau recognized KAYA's value did not support the existing indebtedness, the loan amount was reduced. However, Hui Huliau was not aware that KAYA had received a negative valuation only months before, had overinflated its revenues and profits in its financial statements, or that Prince had no intent to exercise any efforts to increase business for KAYA.

33.    The Loan Agreement divided KAYA's debt into two tranches: Tranche A and Tranche B. Tranche A was to be paid through quarterly interest and principal

payments, if triggered, until a balloon payment in September 2020. Tranche A was for a higher amount than otherwise supported by Hui Huliau's belief of KAYA's value to encourage Prince's efforts to drive business to KAYA. Tranche B was directly tied to KAYA's profitability and designed to further incentivize Prince to develop business for KAYA.

34.     At the closing of the Transaction, Hui Huliau paid Prince $500,000 and permitted him to take $1,587,928.00 from KAYA's account, resulting in a cash payment of $2,087.928.00 to Prince.

## KAYA's Key Personnel

35.     Prior to Hui Huliau's purchase of KAYA, Steven Johnson served as KAYA's President. Johnson was promoted to President by Prince prior to the Transaction. Johnson continued in this role until he resigned abruptly on February 1, 2020, effective February 13, 2020.

36.     In his position as President of KAYA, Johnson made a number of decisions regarding how to categorize allowable and unallowable costs. When questioned about the high amount of unallowable costs, Johnson would dismiss any concerns and blame KAYA's lack of profitability on the individual contracts. It was not discovered until late 2019 and early 2020 that KAYA was routinely characterizing costs as unallowable when they could have been passed through to

the U.S. Government. Although these actions were compliant with government regulations, they negatively impacted KAYA's profitability.

37.    Under Johnson's leadership, KAYA failed to realize a profit on several contracts, resulting in an overall loss of profits in 2017, 2018, and 2019.

38.    In particular, KAYA's fabrication facility in Charleston, North Carolina has lost a significant amount of money each year due to Johnson's mismanagement.

39.    It was not until Hui Huliau took more direct operational control of KAYA in early 2020 that KAYA began to earn a profit. In fact, after replaced Johnson as President, KAYA became more profitable than it had been since Hui Huliau purchased its stock in 2017 despite static revenues.

40.    Upon information and belief, Johnson collaborated with Prince regarding these decisions and crafted a plan to decrease KAYA's profitability. Johnson also took actions that indebted KAYA to benefit Prince. For example, Johnson ensured that KAYA renewed its Deltek licenses in 2020 at a cost of approximately $65,000 when KAYA no longer needed its own Deltek licenses. Johnson insisted on KAYA renewing its own Deltek licenses so the licenses would be in place when Prince took over KAYA.

41.    Johnson also failed to properly manage contracts and would tell Hui Huliau there was nothing that could be done to improve profitability.

21

42.     Johnson also provided confidential and proprietary information to Prince regarding KAYA's day-to-day operations without Hui Huliau's authorization.

43.     Prior to Hui Huliau's purchase of KAYA, Brendan Prince served as KAYA's General Counsel and, a few months after the Transaction, became Hui Huliau's General Counsel. Brendan Prince is Prince's son. On March 11, 2020, Brendan Prince resigned his role as Hui Huliau's General Counsel. Brendan Prince's resignation came 48 hours after he attempted to delete hundreds of emails off KAYA's server but was unable to do so due to a litigation hold related to this case.

44.     Beginning within days of Hui Huliau's purchase of KAYA, Brendan Prince sent Prince inside information regarding KAYA's operations, business development efforts, accounting, and other confidential matters. Brendan Prince did not have the authority to provide that information to Prince nor did he inform Hui Huliau management that he was providing that information to Prince.

45.     Prince received the information from Brendan Prince with an awareness and knowledge that he was not entitled to receive the confidential information. The information passed from Brendan Prince to Prince often occurred after business hours or on the weekend.

46.     Because Prince was involved with another government contracting business, receiving KAYA's confidential information provided him with an unfair

22

competitive advantage. In particular, Prince received information regarding KAYA's contract rates, labor rates, proposals, and other highly competitive information. It was not KAYA or Hui Huliau's practice to provide that type of information outside the company.

47.     Prince also used the confidential information he received from Brendan Prince in part to form the basis of this lawsuit.

48.     Upon information and belief, Prince colluded with Brendan Prince regarding KAYA's day-to-day operations, finances, and business development efforts with the intent of temporarily driving down KAYA's profits. Prince directed Brendan Prince to take actions in preparation for Prince to take control of KAYA absent an agreement regarding Prince to take control of KAYA. For example, Brendan Prince also pressured Hui Huliau to renew KAYA's Deltek licenses, costing the company $65,000.

## Involvement of Maynard Cooper & Gayle, P.C.

49.     Maynard Cooper & Gayle, P.C. ("Maynard Cooper") represented KAYA during the transaction in which Briefne purchased KAYA's stock. During this transaction, KAYA and Prince executed a loan agreement by which Prince loaned KAYA $6,389,201.25 to redeem his shares of KAYA.

23

50.     As part of a conflict waiver, Maynard Cooper promised to not represent Prince or KAYA in the event a dispute arose between them related to the transaction involving the creation of the Loan Agreement.

51.     On September 8, 2017—only two days after Hui Huliau purchased KAYA—an attorney with Maynard Cooper contacted Brendan Prince and Prince regarding a claim KAYA could pursue related to a bid protect in the Bering Strait. Instead of communicating with Hui Huliau, Prince instructed Maynard Cooper to not pursue the claim. Hui Huliau was not provided notice regarding the existence of the claim nor given the opportunity to pursue it. As a result, Hui Huliau was deprived of the opportunity to pursue a potentially valuable claim.

### Subordination Agreement with Regions Bank

52.     On May 11, 2016, Prince executed a subordination agreement in favor of Regions Bank related to KAYA's line of credit. Prince signed a second subordination agreement on September 6, 2017 regarding the Transaction. Prince did not disclose the existence of the subordination agreement leading up to the Transaction. Instead, Hui Huliau received a copy of the subordination agreement for the first time in December 2018.

53.     The subordination agreement impacts the relationship between Regions Bank and KAYA—and by extension—Hui Huliau.

54.     The subordination agreement requires Prince to notify Regions Bank in the event KAYA defaults on the Loan Agreement. In the event of a default, the subordination agreement prevents Prince from accepting any payment, whether in the form of cash or collateral.

55.     In 2019, Prince did not notify Regions Bank of any alleged default by KAYA.

56.     Prince did not communicate with Regions Bank regarding any alleged default by KAYA until shortly before he filed his lawsuit on February 14, 2020. At that point, Prince had received and accepted all outstanding payments from KAYA.

57.     On February 14, 2020, Prince filed suit against defendants.

58.     In April 2020, Regions Bank informed Prince, KAYA, and Hui Huliau that no payments could be made, directly or indirectly, to Prince under the subordination agreement. Regions Bank also informed Prince that he could not receive any payments, directly or indirectly, from KAYA.

59.     In June 2020, Regions Bank again confirmed via email to Russell that Hui Huliau was not permitted to make any payments to Prince under the terms of the subordination agreement.

## Current Status of KAYA

60.     After taking over day-to-day operations of KAYA, Hui Huliau has increased KAYA's profitability significantly. In particular, from January 2020 to

April 2020, KAYA has experienced at least a $300,000 swing in profitability over the same time period in 2019. This is the direct result of Hui Huliau's leadership and involvement.

61.     After Johnson and Brendan Prince were removed from KAYA, there was no one left at KAYA to provide Prince with confidential information or direct KAYA's operations consistent with Prince's directives. Instead, KAYA's operations were fully under the control of Wright on behalf Hui Huliau, thwarting Prince and Johnson's plan to artificially deflate KAYA's profitability.

62.     As a result, KAYA's expenses have been significantly reduced in spite of the constraints put on its operations from the Consent Injunction.

### Improper Solicitation of KAYA Employees by Prince

63.     After Hui Huliau purchased KAYA, Prince solicited two key employees away from KAYA.

64.     In particular, Prince solicited Wes Norris and Connor Morriss when they were employees of KAYA.

65.     Norris served as the Facilities Security Officer, which oversaw security clearance compliance for KAYA and other essential functions. Norris also maintained relationships with two key KAYA customers.

66.     Norris now works for KFS, LLC, a government contracting entity partly owned by Prince.

67.     Morriss managed contracts for KAYA during his employment and maintained relationships with several KAYA customers. Morriss is now the Compliance Director for PAK Legacy, a nonprofit organization associated with Prince and Brendan Prince. When Morriss left, the relationships he maintained left with him.

68.     The Transaction Agreement prohibits Prince from directly or indirectly soliciting, enticing, or inducing any employee of KAYA to become employed by or engaged by Prince or by any other person or to terminate the employee's relationship with KAYA.

69.     Prince's actions in relations to Norris and Morriss violated the Transaction Agreement.

70.     Norris and Morriss possessed confidential and proprietary information belonging to KAYA. Additionally, Norris and Morriss served important functions as employees of KAYA and maintained key relationships during their employment.

## COUNT I – PRINCE
## BREACH OF CONTRACT

71.     Hui Huliau adopts and incorporates by reference each and every allegation contained in paragraphs 1 through 70, inclusive, of this counterclaim as if fully set forth here.

72.     The Loan Agreement and Transaction Agreement are valid and enforceable contracts between Prince and Hui Huliau.

73.     Prince failed to provide accurate financial statements to Hui Huliau in connection to the Transaction.

74.     Prince's failure to provide accurate financial statements inaccurately inflated KAYA's revenues and overall valuation.

75.     As a direct, proximate, and foreseeable consequence, Hui Huliau has been damaged.

76.     All applicable conditions precedent to bringing this claim, if any, have been satisfied or waived, or are the subject of an estoppel, thus entitling Hui Huliau to relief.

**WHEREFORE,** Hui Huliau demands judgment against Prince for (a) compensatory damages; (b) interest as allowed by law; (c) costs of this action; (d) attorneys' fees; and (e) any and all other relief to which Hui Huliau may be entitled.

## COUNT II - PRINCE
## BREACH OF CONTRACT

77.     Hui Huliau adopts and incorporates by reference each and every allegation contained in paragraphs 1 through 70, inclusive, of this counterclaim as if fully set forth here.

78.     The Transaction Agreement is a valid and enforceable contract between Prince and Hui Huliau.

79.     Prince violated the Transaction Agreement by directly or indirectly soliciting, enticing, or inducing Norris and Morriss to leave KAYA and work for entities associated with Prince.

80.     Prince's violation of the nonsolicitation provision of the Transaction Agreement deprived KAYA of two valuable employees who possessed confidential and proprietary information.

81.     As a direct, proximate, and foreseeable consequence, Hui Huliau has been damaged.

82.     All applicable conditions precedent to bringing this claim, if any, have been satisfied or waived, or are the subject of an estoppel, thus entitling Hui Huliau to relief.

**WHEREFORE,** Hui Huliau demands judgment against Prince for (a) compensatory damages; (b) interest as allowed by law; (c) costs of this action; (d) attorneys' fees; and (e) any and all other relief to which Hui Huliau may be entitled.

## COUNT II – PRINCE
## FRAUDULENT INDUCEMENT

83.     Hui Huliau adopts and incorporates by reference each and every allegation contained in paragraphs 1 through 70, inclusive, of this counterclaim as if fully set forth here.

84.     Prince provided Hui Huliau with a valuation of KAYA from 2015 which he knew was inaccurate and failed to provide the valuation of KAYA from 2017.

85.     Prince also failed to provide accurate financial statements to Hui Huliau.

86.     Prince had an obligation to provide accurate information when he shared KAYA's 2015 valuation and its financial statements with Hui Huliau.

87.     Prince knew the 2015 valuation and financial statements were false when he supplied them to Hui Huliau.

88.     Hui Huliau reasonably relied on the 2015 valuation of KAYA and the financial statements of KAYA in valuing KAYA and restructuring the loan with Prince, resulting in the unjust enrichment of Prince.

89.     Hui Huliau would not have entered into the Loan Agreement or executed the Transaction if Prince had not fraudulently induced it to act.

90.     In the alternative, the contracts between Prince and Hui Huliau are not valid or enforceable.

91.     As a direct, proximate, and foreseeable consequence of Prince's fraudulent inducement, Hui Huliau has been damaged.

**WHEREFORE,** Hui Huliau demands judgment against Prince for (a) compensatory damages; (b) interest as allowed by law; (c) costs of this action; (d)

punitive damages; and (e) any and all other relief to which Hui Huliau may be entitled.

## COUNT III – PRINCE
## SETOFF

92.    Hui Huliau adopts and incorporates by reference each and every allegation contained in paragraphs 1 through 70, inclusive, of this counterclaim as if fully set forth here.

93.    If it is determined that Hui Huliau is liable on any of Prince's claims in the complaint, Hui Huliau is entitled to a setoff against any recovery by Prince in the total amount due Hui Huliau on its counterclaims.

**WHEREFORE**, Hui Huliau demands judgment against Prince for (a) the setoff amount; (b) interest as allowed by law; (c) costs of this action; and (d) any and all other relief to which Hui Huliau may be entitled.

## COUNT IV – PRINCE, JOHNSON, BRENDAN PRINCE
## VIOLATION OF THE ALABAMA TRADE SECRETS ACT

94.    Hui Huliau adopts and incorporates by reference each and every allegation contained in paragraphs 1 through 62, inclusive, of this counterclaim as if fully set forth here.

95.    All or some of the information Prince received from Johnson and/or Brendan Prince included proposal information, labor rate information, financial data, and other proprietary and competition-sensitive information belonging to Hui Huliau

31

and/or KAYA. This information is protectible under the Alabama Trade Secrets Act. Ala. Code (1975) § 8-27-1, *et seq.*

96.    Hui Huliau took reasonable steps to maintain the secrecy of KAYA's trade secrets.

97.    KAYA trade secrets have significant economic value to Hui Huliau, are not publicly known, and cannot be ascertained readily from publicly available information.

98.    Prince acquired KAYA's trade secrets through improper means.

99.    By disclosing KAYA's trade secrets to Prince, Johnson and Brendan Prince breached a confidence reposed in them by Hui Huliau.

100.   Upon information and belief, Prince has used and continues to use KAYA's trade secrets, which has caused harm to Hui Huliau.

101.   Prince's violation of the Alabama Trade Secrets Act was willful and malicious.

**WHEREFORE**, Hui Huliau demands judgment against Prince for (a) compensatory and punitive damages; (b) interest as allowed by law; (c) attorneys' fees; (d) costs of this action; and (e) any and all other relief to which Hui Huliau may be entitled.

## COUNT V – JOHNSON, BRENDAN PRINCE
## BREACH OF FIDUCIARY DUTY

102.   Hui Huliau adopts and incorporates by reference each and every allegation contained in paragraphs 1 through 70, inclusive, of this counterclaim as if fully set forth here.

103.   As officers of KAYA or Hui Huliau, Johnson and Brendan Prince owed Hui Huliau a duty to act at all times in good faith and in the best interests of Hui Huliau. Implicit in this duty is a requirement that Johnson and Brendan Prince not act in a way that was detrimental or otherwise adverse to KAYA's interests or Hui Huliau's interests.

104.   Johnson and Brendan Prince breached his fiduciary duty to Hui Huliau by engaging in a wide variety of misconduct. Among other things, Johnson and/or Brendan Prince provided confidential and proprietary information to Prince, assisted Prince in preparing this lawsuit, caused KAYA to incur unnecessary costs, artificially deflated KAYA's profitability, and other actions that devalued KAYA.

105.   As a direct, proximate, and foreseeable consequence, Hui Huliau has been damaged.

**WHEREFORE,** Hui Huliau demands judgment against Johnson and Brendan Prince for (a) compensatory and punitive damages; (b) interest as allowed by law; (c) costs of this action; and (d) any and all other relief to which Hui Huliau may be entitled.

## COUNT VI – PRINCE
## FRAUDULENT SUPPRESSION

106.   Hui Huliau adopts and incorporates by reference each and every allegation contained in paragraphs 1 through 70, inclusive, of this counterclaim as if fully set forth here.

107.   Prince suppressed certain material facts from Hui Huliau including, but not limited to, that KAYA's valuation was negative in 2017; KAYA's financials included improper revenue figures; he intended to direct KAYA's operations through Johnson and Brendan Prince to reduce KAYA's profitability; he would not engage in business development efforts on behalf of KAYA and/or any Hui Huliau-related entity; he would improperly receive and use KAYA's confidential information; he had executed a subordination agreement with Regions Bank.

108.   Prince owed Hui Huliau a duty and was obligated to disclose these and other material facts to Hui Huliau.

109.   Prince acted intentionally, recklessly, and/or negligently suppressed these material facts from Hui Huliau from July 2017 through February 14, 2020 through conversations with Wright, Russell, and others.

110.   Hui Huliau reasonably relied on Prince's suppression to its detriment.

111.   Prince's fraudulent concealment or suppression and deceit has caused and continues to cause substantial financial loss and damages to Hui Huliau.

**WHEREFORE,** Hui Huliau demands judgment against Prince for (a) compensatory and punitive damages; (b) interest as allowed by law; (c) costs of this action; and (d) any and all other relief to which Hui Huliau may be entitled.

### COUNT VII
### FRAUD

112.   Hui Huliau adopts and incorporates by reference each and every allegation contained in paragraphs 1 through 70, inclusive, of this counterclaim as if fully set forth here.

113.   On or before September 7, 2017, Prince provided financial statement of KAYA to Hui Huliau.

114.   At the time Prince provided KAYA's financial statements to Hui Huliau, he represented the accuracy of the revenue listed for KAYA.

115.   The representations made by Prince related to KAYA's revenue were false.

116.   Prince made the misrepresentation knowingly, recklessly, or by mistake with the intention that Hui Huliau rely on them.

117.   Hui Huliau reasonably relied on Prince's misrepresentations to its detriment.

118.   Prince's misrepresentations have caused and continue to cause substantial financial loss and damages to Hui Huliau.

**WHEREFORE,** Hui Huliau demands judgment against Prince for (a) compensatory and punitive damages; (b) interest as allowed by law; (c) costs of this action; and (d) any and all other relief to which Hui Huliau may be entitled.

### JURY DEMAND

119.   Hui Huliau demands a trial by jury on all issues so triable.

*S/Lauren A. Smith*
Lauren A. Smith (ASB-0432-E48S)
C. Gregory Burgess (ASB-1519-R79C)
Stephanie M. Gushlaw (ASB-1050-F67A)

**Attorneys for defendants Hui Huliau, Deryl Wright, and Howard Russell**

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087
Huntsville, Alabama 35804
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email:  las@lanierford.com
         cgb@lanierford.com
         smg@lanierford.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July, 2020, I electronically filed the foregoing with Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

BRAD ENGLISH
BENJAMIN L. MCARTHUR
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street, S.W.
Huntsville, Alabama 35801
Telephone Number: (256) 551-0171
Email: benglish@maynardcooper.com
    bmcarthur@maynardcooper.com

*S/Lauren A. Smith*
Lauren A. Smith

## PLEASE SERVE THE FOLLOWING BY CERTIFIED MAIL:

STEVEN JOHNSON
1185 Mundys Landing
Versailles, KY 40383

BRENDAN PRINCE
410 Holmes Ave NE
Huntsville, AL 35801