FILED

2020 Oct-15  PM 05:30
U.S. DISTRICT COURT
N.D. OF ALABAMA


# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **JOHN PRINCE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 5:20-cv-00208-LCB** |
| ) | |
| **HUI HULIAU, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

---

| | |
|---|---|
| **HUI HULIAU,** ) | |
| ) | |
| **Counterclaim and** ) | |
| **Third-Party Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **JOHN PRINCE, BRENDAN** ) | |
| **PRINCE and STEVE JOHNSON,** ) | |
| ) | |
| **Counterclaim and** ) | |
| **Third-Party Defendants.** ) | |

## <u>SECOND AMENDED AND RESTATED COMPLAINT</u>

Pursuant to Rules 15 and 19, Fed. R. Civ. P., and this Court's July 10, 2020

Order (doc. 60), Plaintiff John Prince ("Prince") amends and restates his complaint

against Hui Huliau ("H2"), Deryl Wright ("Wright"), Howard Russell ("Russell"),

4P Management Company, LLC and 4P Management, Inc., and shows the Court as follows:

## Parties

1.      Prince is an adult citizen of Marshall County, Alabama.

2.      H2 is a Hawaiian Nonprofit Corporation headquartered in Waianae, Hawaii.

3.      Upon information and belief, Wright is an adult citizen of Norman Oklahoma.  He is H2's chief executive officer.

4.      Upon information and belief, Russell is an adult citizen of Monroeville, Pennsylvania.  He is H2's chief financial officer.

5.      Upon information and belief, Defendant 4P Management Company, LLC is (or was) a Delaware limited liability company headquartered in Norman, Oklahoma.  According to the Oklahoma Secretary of State's website, 4P Management Company, LLC's corporate status is "Cancelled" because it has not filed an annual report for three years.  Upon information and belief, one or more of H2, Wright, and/or Russell are (or were) members of 4P Management Company, LLC.  Wright is listed as 4P Management Company, LLC's registered agent for service of process.

6.     Upon information and belief, Defendant 4P Management, Inc. is an unregistered entity, joint venture and/or DBA owned or controlled by one or more of H2, Wright, Russell and/or 4P Management Company, LLC.  Prince performed a diligent search for 4P Management, Inc.'s corporate status after reviewing Declarations submitted by Wright and Russell concerning payments made to "4P Management, Inc." in connection with H2's acquisition of KAYA Associates, Inc. (*See* Doc. 47-1 at ¶ 4 ("At the closing of the transaction, Hui Huliau paid $200,000 to 4P Management, Inc., a management company wholly owned by Hui Huliau…. While these funds were paid out of a line of credit held by KAYA, the funds were paid to 4P Management on behalf of Hui Huliau."); Doc. 47-2 at ¶ 8 ("4P Management, Inc. is a company that provides services to Hui Huliau….4P Management was paid $200,000 after the purchase transaction.").)

7.     4P Management Company, LLC and 4P Management, Inc. are collectively referred to herein as "4P."

8.     H2, Wright, Russell and 4P acted individually and/or as the agent, servant, employee, partner and/or co-venturer of one another, or were otherwise engaged in a joint enterprise.  Alternatively, each of them acted through their agents, servants, employees, partners and/or co-venturers and are liable to Prince

under respondeat superior and/or agency theories, or are otherwise vicariously liable.

## Jurisdiction and Venue

9.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as complete diversity exists between the parties, and the amount in controversy exceeds $75,000.00.

10.      This Court has personal jurisdiction over H2, Wright, Russell and 4P because, among other things: (1) they transacted, and continue to transact, business within the state of Alabama; (2) the claims asserted in this action arose from or are connected with purposeful and tortious acts or omissions committed by them, in whole or in part, in or directed toward a resident of the state of Alabama; (3) they have committed tortious acts or omissions, directly or indirectly, that caused substantial harm in the state of Alabama; (4) they have had continuous and systematic contacts with the state of Alabama by engaging in numerous activities that have had an effect in this state; (5) they executed contracts in Alabama with an Alabama resident (Prince) that required performance in Alabama; and/or (6) they have consented to this Court's exercise of personal jurisdiction in this action.

11.     Moreover, H2 and Prince stipulated to the application of Alabama law and to jurisdiction in "a court of competent subject matter jurisdiction located in Huntsville, Madison County, Alabama."  (Doc. 24-7 at pp. 4-5.)

12.     Venue is proper in this Court under 28 U.S.C. § 1391.

### Factual Background

13.     Prince and others formed KAYA Associates, Inc. ("KAYA") in 2003. KAYA is a defense contractor headquartered in Huntsville, Alabama.

14.     KAYA participated in the Small Business Administration's 8(a) program, which made it eligible for 8(a) set aside contracts.

15.     KAYA grew and prospered under Prince's leadership, and built its business on opportunities available to it in the 8(a) program.  Unfortunately, KAYA was unable to replicate that success once it graduated from the program.

16.     In April of 2016, Breifne Group, LLC ("Breifne") acquired a small interest in KAYA and then caused KAYA to redeem Prince's KAYA stock.  In return for his stock, Prince received (among other things) a promissory note in the face amount of $6,389,201.25.  Breifne became KAYA's sole owner.

17.     KAYA changed hands again in September of 2017, when H2 acquired the stock from Breifne (the "H2 Transaction").  The H2 Transaction involved

multiple agreements between two or more of Breifne, H2 and Prince.  The omnibus document that described the entire H2 Transaction and identified the ancillary documents was the "Transaction Agreement."  (Doc. 24-2.)

18.     As part of the H2 Transaction, Prince and KAYA entered into an Amended and Restated Loan and Security Agreement (the "Loan Agreement"), which restructured KAYA's debt to Prince by dividing it into two tranches: Tranche A, in the face amount of $3,287,500.00 (the "Tranche A Loan") and Tranche B, was in the amount of $1,314,201.00 (the "Tranche B Loan").  The total amount of that restructured debt was commemorated by an Amended and Restated Promissory Note (the "Restated Promissory Note").  (Doc. 24-2 at pp. 91-92.)

19.     The Tranche A Loan was due in September of 2020.  (Doc. 24-5 at p. 2, § 1.03.2.)  H2 guaranteed KAYA's obligations to Prince pursuant to a Guaranty Agreement (doc. 24-6) and pledged the KAYA stock as collateral pursuant to a Stock Pledge Agreement (doc. 24-7).

20.     The Loan Agreement required KAYA and/or H2 (as guarantor) to make quarterly interest payments equal to 6% of the unpaid balance of the Tranche A Loan or approximately $49,000.00 each.  It also required quarterly principal payments in an amount equal to the greater of zero or 30% of KAYA's free cash flow for the calendar quarter.

21.    The Loan Agreement also required KAYA and/or Hui to give Prince: (1) KAYA's compiled fiscal year-end financial statements prepared by an independent certified public accountant; (2) KAYA's interim company prepared financial statements after the close of each fiscal quarter; and (3) such other financial and related information when and as requested by Prince regarding KAYA and the collateral (the KAYA stock).

22.    The Loan Agreement prohibited H2 from causing or allowing KAYA to engage in specific transactions (the "Prohibited Transactions") without Prince's prior written consent, including without limitation: (1) incurring new indebtedness that would push KAYA's debt service coverage beyond a three-to-one (3:1) ratio during its first year after incurring the debt; (2) liquidating, discontinuing, or materially reducing KAYA's normal operations; (3) dissolving, merging, liquidating, or selling KAYA; (4) guaranteeing, endorsing, or becoming a surety for obligations of any other person or entity; (5) making any loans or advancing any monies to any other third person or entity.

23.    KAYA and/or H2 made the required interest payments until it missed the interest payment due in July of 2019.  The failure to make this payment resulted in a default under the Loan Agreement and the Guaranty Agreement.

None of the applicable documents gave KAYA or H2 the opportunity to cure a default.

24.    On August 15, 2019, Prince's counsel wrote H2 about its default. Among other things, the letter demanded that Prince be permitted to inspect KAYA's books and records and that H2 neither permit nor allow KAYA to engage in any transactions outside its ordinary course of business.

25.    At H2's request, Prince met with Russell to discuss the situation, but never agreed to waive the default.

26.    In late 2019, Prince received certain KAYA financial records. Those records revealed, among other things, that H2 had caused and allowed KAYA to engage in a number of Prohibited Transactions including:  (a) a $200,000.00 payment to 4P on the day the transaction closed; and (b) approximately $1.8 million in loans to H2 and/or its affiliates.  He also discovered that H2 caused KAYA to pay 4P $20,000.00 per month in management fees and somewhere between $30,000.00 - $40,000.00 per month in purported expenses, all while reporting to Prince KAYA had no profit to pay to him against the Tranche A Loan.

27.    Many of the payments were made with money KAYA borrowed from its line of credit with Regions bank.  In May of 2016, KAYA and Regions entered

into a Subordination Agreement that subordinated KAYA's debt to Prince to its obligations to Regions on the line of credit.  Regions has not been repaid, and KAYA defaulted on the line of credit while under H2, Wright and Russell's control.

28.     Prince continued to engage Wright and Russell directly about KAYA and H2's default, which he never agreed to waive.  In January of 2020, Prince asked about payments to Wright, Russell and 4P.  In response, Russell wrote:

> Our management fee is how are [sic] executive salaries are funded to operate Hui Huliau (inclusive of Kaya). We as executives HAVE NO OWNERSHIP in Hui Huliau and our contracted to perform a function just like every other employee of Hui Huliau (inclusive of Kaya). Having a management fee actually improves cashflow than for us to become W2.

29.     In a February 13, 2020 email to Prince, Russell stated that H2 "uncovered significant irregularities that have caused Kaya in excess of 6 figures (maybe even 7 figures) in profitability."  (Doc. 24-10.)

30.     Once the H2 Transaction closed, H2, Wright and Russell controlled KAYA and managed its affairs.  Prince had no say in how KAYA operated, and little or no visibility into KAYA's operations.

31.     H2, Wright and Russell used their control to artificially minimize KAYA's profit and avoid paying Prince, while maximizing the amount they were able to take from KAYA.  H2, Wright and Russell told Prince that KAYA had no profit each calendar quarter and, with one minor exception, made no principal payments.  During the 36-month term of the Restated Promissory Note, Prince received less than $10,000.00 in principal, but H2, Wright, Russell, 4P and their affiliates received approximately $3.2 million during that same period.

32.     Prince filed this lawsuit on or about February 14, 2020.  On July 10, the Court found H2 in default and entered judgment, as to liability only, on Prince's breach of contract claim against H2.

33.     Pursuant to that judgment, on July 14, Prince exercised one of his cumulative remedies and allowed his assignee, Baltic, LLC, to take control of KAYA's stock and KAYA.

## COUNT I – BREACH OF CONTRACT

34.     Prince adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

35.     The Transaction Agreement, Loan Agreement, Restated Promissory Note, Guaranty Agreement, and Stock Pledge Agreement are valid and binding

contracts between Prince and H2.  Prince performed his obligations under each and every one of these contracts.

36.     H2 defaulted and breached its obligations to Prince under those contracts by engaging in Prohibited Transactions including, without limitation, causing and allowing KAYA to pay H2's expenses or prohibited brokers' fees, and making loans to H2 and its "sister companies" or affiliates.  It also depleted KAYA's assets and cash reserves and diminished the value of Prince's collateral, (the KAYA stock).

37.     H2's breach proximately harmed Prince.

WHEREFORE, Prince demands judgment against H2 in an amount sufficient to compensate him for his injuries and damages, according to proof, along with interest, a reasonable attorneys' fee, costs and such other and further relief, at law or equity, to which he may be entitled.

## COUNT II – BREACH OF FIDUCIARY DUTY

38.     Prince adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

39.     H2, Wright and Russell owed fiduciary duties to Prince because a confidential relationship arose from:  (a) the nature of the H2 Transaction; (b) the

contracts consummating the H2 Transaction; and (c) Prince's trust in H2, Wright and Russell.

40.     Prince had the right to call KAYA's debt as opposed to allowing H2 and Breifne to consummate the H2 Transaction.  Instead, Prince restructured his loan to facilitate the H2 Transaction.  As mentioned above, the Restated Promissory Note and Loan Agreement conditioned Tranche A Loan principal payments on KAYA's profitability (although the full amount was due in 36 months).  Prince knew that KAYA would enjoy renewed 8(a) status as a H2 subsidiary and expected its profitability to grow as a result.  Further, he trusted and reasonably believed that H2, Wright and Russell would:  (a) manage KAYA to maximize its profitability; and (b) prevent KAYA from engaging in Prohibited Transactions.  H2, Wright and Russell knew that Prince had reposed his trust in them.

41.     Unfortunately, H2, Wright and Russell breached their fiduciary duties by abusing Prince's trust and taking advantage of him.  They used their control over KAYA to artificially minimize its profit for the purpose of avoiding payments to Prince.  At the same time, they made substantial payments to themselves and their affiliates without Prince's knowledge and consent, usually with borrowed

money.  The improper borrowing diminished KAYA's enterprise value, and the value of its stock (Prince's only collateral), by almost $2 million.

42.     H2, Wright and Russell hid their actions from Prince by, among other things, failing to make the required financial disclosures and reporting only that KAYA was not profitable enough to make principal payments.

43.     H2, Wright and Russell's breaches of their respective fiduciary duties proximately harmed Prince.  Their breaches were so wanton and reckless, and displayed such an utter disregard for Prince's rights, as to warrant the imposition of punitive damages.

WHEREFORE, Prince demands judgment against H2, Wright and Russell in an amount sufficient to compensate him for his injuries and damages, according to proof, punitive damages sufficient to punish H2, Wright and Russell's misconduct and deter similar misconduct in the future, along with interest, costs and such other and further relief, at law or equity, to which he may be entitled.

## COUNT III - FRAUDULENT SUPPRESSION

44.     Prince adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

45.     As previously described, Prince had a confidential relationship with H2, Wright and Russell.  They had special knowledge about their own intentions and management of KAYA and a decided advantage over Prince both before and after the H2 Transaction closed.

46.     H2, Wright and Russell knew that Prince expected them to use their control over KAYA to prevent it from engaging in any Prohibited Transactions. Even before the closing, they had decided not to do so.  Under their dominion and control, KAYA paid $200,000.00 to 4P on the very day of closing.  That payment was a prohibited brokers' fee or, according to Wright and Russell, payment for work 4P did for H2, not KAYA.  Either way, it violated H2's contractual obligations to Prince.  And given that it occurred only a few hours after H2, Wright and Russell assumed control of KAYA, they cannot deny that they intended to make the payment before closing.

47.     After closing, H2, Wright and Russell continued to cause or allow KAYA to engage in Prohibited Transactions.  They also used their dominion and control to artificially minimize KAYA's profit and maximize payments to themselves or for their own benefit.  H2, Wright and Russell knew all of that was happening because they were the ones making it happen.

48.     Under the circumstances, H2, Wright and Russell had a duty to disclose their intentions and their actions to Prince.  That included their intention and actions to cause KAYA to engage in Prohibited Transactions and artificially reduce KAYA's profit with unallowable expenses, management fees and other payments to (or on behalf of) themselves or their affiliates.

49.     All of the suppressed facts were material because, had Prince known them, he would have taken action to protect his rights.  Instead of disclosing these material facts to Prince, H2, Wright and Russell actively concealed them by, among other things, failing to provide the required financial disclosures.

50.     Alternatively or additionally, when H2, Wright and Russell told Prince that KAYA had no profit from which to make quarterly principal payments against the Tranche A Loan, they had a duty to disclose the additional material facts necessary to put their statements in context.  That is, H2, Wright and Russell had a duty to tell Prince that KAYA had no profit because they burdened it with unallowable expenses, intercompany loans and unnecessary management fees. Instead, they fraudulently suppressed those material facts.

51.     H2, Wright and Russell's fraudulent suppression proximately harmed Prince.  And their suppression was so wanton and reckless, and displayed such an

utter disregard for Prince's rights, as to warrant the imposition of punitive damages.

WHEREFORE, Prince demands judgment against H2, Wright and Russell in an amount sufficient to compensate him for his injuries and damages, according to proof, punitive damages sufficient to punish H2, Wright and Russell's misconduct and deter similar misconduct in the future, along with interest, costs and such other and further relief, at law or equity, to which he may be entitled.

### COUNT IV – INTENTIONAL INTERFERERNCE WITH CONTRACT

52.     Prince adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

53.     Wright, Russell and 4P knew that Prince had contracts with KAYA and H2, including the Transaction Agreement, Loan Agreement, Restated Promissory Note, Guaranty Agreement, and Stock Pledge Agreement.  And they knew or reasonably should have known that those contracts gave Prince certain protections, such as the restriction on Prohibited Transactions.

54.     Either as independent contractors[1] or H2 employees acting outside the line and scope of their employment, Wright and Russell intentionally, systematically and repeatedly interfered with Prince's contracts with KAYA and H2 by, among other things, using their dominion and control over KAYA to cause it to enter into Prohibited Transactions.  Wright and Russell's actions were without justification and malicious.

55.     Wright and Russell's intentional interference proximately harmed Prince.  And their actions were so wanton and reckless, and displayed such an utter disregard for Prince's rights, as to warrant the imposition of punitive damages.

WHEREFORE, Prince demands judgment against Wright and Russell in an amount sufficient to compensate him for his injuries and damages, according to proof, punitive damages sufficient to punish Wright and Russell's misconduct and deter similar misconduct in the future, along with interest, costs and such other and further relief, at law or equity, to which he may be entitled.

---

[1] Although Wright and Russell serve as H2's CEO and CFO, respectively, their email correspondence with Prince (see ¶ 25) indicates that they are actually independent contractors, not "W2" employees.

## COUNT V – FRAUD ON THE RIGHTS OF CREDITORS

56.     Prince adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

57.     Wright and Russell served as executives of H2 and had dominion and control over KAYA's operations.

58.     Wright and Russell knew that KAYA was indebted to Prince.  As described above, they used their power and control over KAYA to fraudulently divert and destroy KAYA's assets, which were subject to the payment of corporate debts (including the debt to Prince), for the purpose of hindering or delaying those payments.

59.     The fraud occurred each and every day that, under Wright and Russell's control (directly or through H2), KAYA:  (a) paid management fees to Wright, Russell and/or 4P; (b) paid purported expenses to H2 or on behalf of themselves, H2 or their affiliates; and (c) made loans to H2 or its affiliates.

60.     Wright and Russell's actions proximately harmed Prince by stripping all of the value out of KAYA and triggering its Subordination Agreement with Regions, which prevents KAYA (but not H2) from paying its debt to Prince.

61.     Wright and Russell's actions were so wanton and reckless, and displayed such an utter disregard for Prince's rights, as to warrant the imposition of punitive damages.

WHEREFORE, Prince demands judgment against Wright and Russell in an amount sufficient to compensate him for his injuries and damages, according to proof, punitive damages sufficient to punish Wright and Russell's misconduct and deter similar misconduct in the future, along with interest, costs and such other and further relief, at law or equity, to which he may be entitled.

## COUNT VI – UNJUST ENRICHMENT

62.     Prince adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

63.     As described above, Wright and Russell caused or allowed KAYA to make payments to them, on their behalf and/or to 4P.  They knew or should have known that KAYA was prohibited from making those payments.  Alternatively and/or additionally, they knew or should have known that the payments were not legitimately owed.

62.     By obtaining or retaining those payments (or the resulting benefits), Wright, Russell and 4P were unjustly enriched, either directly, indirectly.  But for

their unjust enrichment, KAYA would have paid all, or at least a substantial

portion, of the Tranche A Loan.  As such, Wright, Russell and 4P have money that,

in equity and good conscience, belongs to Prince.

WHEREFORE, Prince demands judgment in an amount sufficient to

disgorge any money or benefit that Wright, Russell and/or 4P obtained or retained

that, in equity and good conscience belongs to Prince, along with interest, costs

and such other and further relief, at law or equity, to which he may be entitled.

## COUNT VII – CONSPIRACY

65.    Prince adopts and incorporates by reference the allegations of the

preceding paragraphs, as if fully set forth herein.

66.    Wright, Russell and 4P conspired to:  (a) breach Wright and Russell's

fiduciary duties to Prince; (b) fraudulently suppress information from Prince; (c)

intentionally interfere with Prince's contracts with H2 and KAYA; and (d) commit

fraud on Prince's rights as KAYA's and H2's creditor, all for the purpose of

harming Prince and benefitting themselves.

67.    Wright, Russell and/or 4P took the affirmative steps outlined above in

furtherance of their conspiracy.  Their actions were so wanton and reckless, and

displayed such an utter disregard for Prince's rights, as to warrant the imposition of punitive damages.

WHEREFORE, Prince demands judgment against Wright, Russell and 4P in an amount sufficient to compensate him for his injuries and damages, according to proof, punitive damages sufficient to punish Wright, Russell and 4P's misconduct and deter similar misconduct in the future, along with interest, costs and such other and further relief, at law or equity, to which he may be entitled.

## COUNT VIII – DECLARATORY JUDGMENT

68.     Prince adopts and incorporates by reference the allegations of the preceding paragraphs, as if fully set forth herein.

69.     There is a justiciable controversy about Prince's and H2's respective rights and obligations arising from the H2 transaction, including under the Transaction Agreement, the Loan Agreement, the Restated Promissory Note, the Guaranty Agreement, and the Stock Pledge Agreement.

70.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201, et seq. and Ala. Code §§ 6-6-220, et seq., Prince asks the Court to enter a judgment resolving that controversy.

71.     All parties necessary for full and complete relief are before the Court.

72.     No party has previously sought similar relief.

73.     Prince's hands are clean and he is prepared to do equity.

WHEREFORE, Prince prays that the Court will enter judgment declaring H2's and Prince's respective rights and obligations, and awarding Prince such other and further relief to which he may be entitled.

Respectfully submitted,

/s/ W. Brad English
W. Brad English
Benjamin L. McArthur
**Attorneys for Plaintiff John Prince**

**OF COUNSEL:**
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street
Huntsville, Alabama 35801
Telephone:  (256) 551-0171
Facsimile:  (256) 512-0119
Email:  benglish@maynardcooper.com
         bmcarthur@maynardcooper.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 15th day of October, 2020, served a copy of the foregoing upon all counsel of record through the Court's electronic case management system, and upon the following in accordance with Fed. R. Civ. P. 4:

4P Management Company, LLC
c/o Deryl Wayne Wright, Registered Agent
1500 Wandering Oaks Lane
Norman, Oklahoma 73026

4P Management, Inc.
c/o Deryl Wayne Wright, Registered Agent
1500 Wandering Oaks Lane
Norman, Oklahoma 73026

/s/ W. Brad English
Of Counsel